## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 02-272-MPT |
| | ) | |
| AOL TIME WARNER INCORPORATED, | ) | |
| et al., | ) | |
| Defendants. | ) | |
| ------------------------------------------------------- | ) | |
| INLINE CONNECTION CORPORATION, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 02-477-MPT |
| | ) | |
| EARTHLINK, INC., | ) | Consolidated Cases |
| Defendant. | ) | |

## MEMORANDUM OPINION

Thomas C. Grimm, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell, 1201 N. Market Street, P.O. Box 1347, Wilmington, Delaware 19899.
    Of Counsel: John R. Ferguson, Esquire and C. Joël Van Over, Esquire, Swidler Berlin Shereff Friedman LLP, Washington D.C.;
Counsel for Plaintiff Inline Connection Corporation.

Frederick L. Cottrell, III, Esquire and Chad M. Shandler, Esquire, Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899.
    Of Counsel: Robert J. Gunther, Jr., Esquire and Kurt M. Rogers, Esquire, Latham & Watkins LLP, New York, New York, David A. Nelson, Esquire, Latham & Watkins LLP, Chicago, Illinois;
Counsel for Defendant America Online, Inc.

John L. Reed, Esquire, Duane Morris LLP, 1100 North Market Street, 12th Floor, Wilmington, Delaware 19801.
    Of Counsel: L. Norwood Jameson, Esquire and Matthew C. Gaudet, Esquire, Duane Morris LLP, Atlanta, Georgia, L. Lawton Rogers, III, Esquire and Mark C. Comtois, Esquire, Duane Morris LLP, Washington, D.C.;
Counsel for Defendant EarthLink, Inc.

Wilmington, Delaware
October 18, 2005

**Thynge, United States Magistrate Judge**

## I. INTRODUCTION

This is a patent infringement case. On April 12, 2002, Inline Communication

Corporation ("Inline")[1] filed suit alleging infringement by AOL Time Warner

Incorporated,[2] America Online, Inc. ("AOL"),[3] and EarthLink, Inc. ("EarthLink")[4]

(hereinafter, AOL and EarthLink are referred to as "defendants") of four of its patents:

U.S. Patent Nos. 5,844,596 (the "'596 patent"), 6,243,446 (the "'446 patent"), 6,542,585

(the "'585 patent"), and 6,236,718 (the "'718 patent") (collectively "the patents-in-suit").[5]

Inline alleges defendants' Digital Subscriber Line products infringe claim 61 of the '596

patent, claims 1-6 of the 446 patent, claims 1, 2, 4, 8 and 9 of the '585 patent and

claims 22, 24, 38 and 39 of the '718 patent. The procedural history and descriptions of

the patented technology and the allegedly infringing products are detailed in this court's

previous claim construction and summary judgment opinions, familiarity with which is

assumed by the reader.[6]

On April 13, 2005, this court issued its Summary Judgment Opinion denying both

---

[1] Inline is a Virginia corporation with its principal place of business in Virginia.

[2] AOL Time Warner Incorporated is a Delaware corporation with its principal place of business in New York. AOL Time Warner Incorporated was subsequently dismissed from this action. *See* D.I. 266.

[3] AOL is a Delaware corporation with its principal place of business in Virginia.

[4] EarthLink is a Delaware corporation with its principal place of business in Georgia.

[5] The '596, '446, and the '585 patents are each continuations of a patent application filed July 14, 1989. The July 14, 1989 application issued as U.S. Patent No. 5,010,399 (the "'399 patent"), which is not asserted in this action. More specifically, the '585 patent is a continuation of the application that resulted in the '446 patent, which is a continuation of the application that resulted in the '596 patent. Throughout this opinion, the '596, '446, and '585 patents may be collectively referred to as the "'596 family of patents" as they each share a substantially identical written disclosure. The '718 patent is also a continuation of the patent application filed July 14, 1989, which resulted in the '399 patent and has a separate written disclosure.

Because the '596 family of patents each share a substantially identical specification, citation to the '596 patent's specification, or to the "common specification," in this opinion should be understood to refer to the same language in the written descriptions of the '446 patent and the '585 patent.

[6] *Inline Connection, Corp. v. AOL Time Warner Inc.*, 302 F. Supp. 2d 307 (D. Del. 2004) (the "*Markman* Opinion"); *Inline Connection, Corp. v. AOL Time Warner Inc.*, 364 F. Supp. 2d 417 (D. Del. 2005) (the "Summary Judgment Opinion").

plaintiff's partial motion for summary judgment of infringement and defendants' motion

for summary judgment of non-infringement of the '596 family of patents based on its

determination that there remains a material question of fact to be determined at trial.

On April 27, 2005 defendants jointly filed a motion for clarification and reconsideration

of the Summary Judgment Opinion (the "joint motion").[7] On the same date, AOL

separately filed an additional motion for reconsideration of that opinion (the "AOL

motion").[8] This is the court's decision on those motions.

## II. STANDARD OF REVIEW

Neither the joint motion nor the AOL motion specifically cite the particular rule

from the Federal Rules of Civil Procedure or the Local Rules of this court as the basis

for their motions. The joint motion, however, cites *BP Amoco Chemical Co. v. Sun Oil*

*Co.*, 200 F. Supp. 2d 429, 431 [sic 432] (D. Del. 2002) for the proposition that "[m]otions

for reconsideration can be granted where there is a need to correct a clear error of law

or **fact** to prevent manifest injustice."[9] Consequently, the court will reiterate the legal

standard set forth in *BP Amoco* that will be applied to defendants' motions.

Motions for reconsideration, as a general rule, are granted sparingly and
only in limited circumstances. *See Dentsply Int'l. v. Kerr Mfg. Co.,* 42 F.
Supp. 2d 385, 419 (D. Del. 1999). A party bringing a motion seeking to
alter or amend an order, pursuant to Fed. R. Civ. P. 59(e), must establish
one of three grounds: (I) there is an intervening change in controlling law,
(ii) new evidence has become available, or (iii) there is a need to correct
the court's clear error of law or fact or to prevent manifest injustice. *Max's
Seafood Café v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (citing *North
River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.
1995)). Furthermore, motions for reconsideration "should not be used to

[7] D.I. 301.
[8] D.I. 300.
[9] D.I. 301 at 5.

2

rehash arguments already briefed." *Dentsply,* 42 F. Supp. 2d at 419.[10]

The *BP Amoco* court also noted that "the [Federal] Rules [of Civil Procedure] do

not expressly recognize motions for reconsideration" but determined that it would treat

the plaintiff's motion in that case as a motion to reconsider its prior order and would

"incorporate the standards of both Rule 59 and Local Rule 7.1.5."[11]   The court stated

that, like motions brought pursuant to Rule 59:

> [M]otions for reargument under Delaware Local Rule 7.1.5, are granted
> only in narrow circumstances.   A court should only grant reargument
> when (I) the court has patently misunderstood a party; (ii) the court has
> made a decision outside of the adversarial issues presented to the court
> by the parties, or (iii) the court has made an error not of reasoning but of
> apprehension. *Schering Corp. v. Amgen, Inc.,* 25 F. Supp. 2d 293, 295
> (D. Del. 1998).   Like motions for reconsideration, motions for reargument
> cannot be granted in circumstances where the movant simply "rehashes
> material and theories already briefed and decided." *Id.*  In addition, "a
> motion for reargument may not be used to supplement or enlarge the
> record" on which the court made its initial decision. *Stairmaster
> Sports/Medical Products, Inc. v. Groupe Procycle, Inc.,* 25 F. Supp. 2d
> 270, 292 (D. Del. 1998).[12]

The court will, likewise, apply the legal standards set forth in *BP Amoco* in its

consideration of defendants' motions for reconsideration.

## III. POSITIONS OF THE PARTIES

### A.    THE JOINT MOTION

Defendants' joint motion argues that the court's construction of the "signal

interface" claim term requires that "the signal interface must be located at the particular

point of convergence that is the *pre-existing interface point* where 'the public telephone

---

[10] *BP Amoco,* 200 F. Supp. 2d at 432 (footnote omitted).

[11] *Id.* at 432 n.2.

[12] *Id.* at 432.

network (i.e., an ordinary telephone trunk line)' meets the extended pairs."[13] Defendants base that argument on their interpretation of the court's determination, in the Summary Judgment Opinion, of the inventor's definition of the phrase "public trunk line," which definition is a part of its "signal interface" construction.

According to defendants, if the court's Summary Judgment Opinion is interpreted to permit the claimed "signal interface" to be interposed at any of the multiple pre-existing points of convergence on the telephone wiring network, then the placement of the "signal interface" defines the public trunk line and extended pairs segments of the telephone wiring network. Because the court expressly rejected such an interpretation, defendants argue, any reading of the court's opinion other than to require a single point of convergence at the boundary of the public trunk line and the extended pairs is inconsistent with the court's analysis. Based on this single point of convergence argument, defendants maintain that Inline has failed to present evidence establishing that a remote terminal DSLAM is located at that particular pre-existing point of convergence and, therefore, that the court should reconsider it's prior order and grant defendants' motion for summary judgment of non-infringement.

Inline argues that defendants' motion for reconsideration should be denied for several reasons.

First, Inline contends defendants did not move for summary judgment on the remote terminal DSLAM location and that the joint motion is actually a new motion for summary judgment and is, therefore, improper in the context of a motion to reconsider.

---

[13] D.I. 301 at 2.

4

Second, Inline maintains that the court adopted defendants' construction of "signal interface" and that the joint motion is an inappropriate attempt to modify that construction.

Third, Inline disagrees with defendants' request that the court clarify its summary judgment order to require that Inline present evidence that each accused remote terminal DSLAM is located at a specific pre-existing point of convergence on the telephone wiring network. This request is based on defendants' alleged misinterpretation of the court's opinion. Inline maintains that the court found, and the patents explicitly state, that there are multiple points of convergence at which the claimed "signal interface" may be interposed. Inline suggests that the court's opinion determined only that the "signal interface" must be interposed at one of those pre-existing points of convergence, rather than "anywhere" on the telephone wiring network. Inline asserts that there is no conflict with the court's rejection of the argument that the "signal interface" may be interposed at any point on the telephone wires downstream of the "telephone exchange" and the court's finding that a remote terminal interface point is an existing point of convergence. This assertion is based on Inline's argument that, the court emphasized that it is the existing telephone network that is used to implement the invention and existing points of convergence are part of this existing network.

Finally, Inline contends that defendants have failed to rebut its evidence purportedly showing that defendants offer and/or sell ADSL services using remote terminals located at one of these points of convergence. According to Inline, defendants misstate the standard for proving infringement, which does not require that Inline show that defendants "actually provide" ADSL service through remote terminal

DSLAMs but that, under 35 U.S.C. § 271, the patent statute defines infringement to include an "offer" for sale of an infringing product or service. Inline contends that the evidence in the summary judgment record, at the very least, supports the court's conclusion that there is a material issue of fact as to whether defendants infringe the '596 family of patents.

B. THE AOL MOTION

In AOL's separate motion, it argues that, in determining that there is a triable issue of fact, the court erroneously considered evidence presented by Inline cumulatively, rather than separately with regard to each defendant, and that the only evidence cited by the court that is specific to AOL is insufficient to raise a material question of fact, as it is purportedly unauthenticated hearsay which would be inadmissible at trial.

In opposition to the AOL motion, Inline again asserts that AOL did not move for summary judgment of non-infringement on the remote terminal DSLAM configuration. Therefore, Inline contends that the AOL motion is not a motion to reconsider at all, but rather, is a new motion for summary judgment. Inline also maintains that the AOL motion does not satisfy the standard for a motion for reconsideration as it, purportedly, presents no new evidence or change in controlling law. Inline argues that AOL points to no clear error of law and fails to identify a manifest injustice that would occur if the court denies the motion.

6

## IV. DISCUSSION

### A. THE JOINT MOTION

Defendants' joint motion rests on their premise that, although there are multiple pre-existing points of convergence on a telephone wiring network, the court's April 13, 2005 Summary Judgment Opinion requires the claimed "signal interface" be interposed at only one of those points of convergence. Defendants contend that any other interpretation of the court's summary judgment opinion is inconsistent with the court's determination that placement of the "signal interface" does not define certain segments of the telephone wiring network. As explained below, neither the court's opinion, nor the common specification support defendants' premise. The court determines, therefore, that there is no need to reconsider or clarify its Summary Judgment Opinion.[14]

The parties' cross motions for summary judgment were based primarily upon this court's construction of the "signal interface" claim term. In the *Markman* Opinion, the court adopted defendants' proposed construction of "signal interface," verbatim, construing that term to mean, "[a] device interposed on the opposite end (i.e., the local side) of the public trunk line (as defined by the inventor in the patent) from the telephone exchange that performs the recited functions of the incorporated circuitry."[15]

At the *Markman* stage of these proceedings, the parties did not articulate specific positions regarding how the inventor defined the public trunk line in the '596 family of

---

[14] Because the court determines that the basic premise of defendants' joint motion is incorrect, it is unnecessary to address Inline's alternative arguments in opposition to that motion.

[15] *Inline Connection, Corp. v. AOL Time Warner Inc.*, 302 F. Supp. 2d 307, 329 (D. Del. 2004).

7

patents' common specification. The inventor's definition of public trunk line gained import at the summary judgment stage, however, as the parties' motions were centered on the "signal interface" claim term which is, in part, defined by reference to the public trunk line. Thus, a considerable portion of the court's summary judgment opinion was devoted to a discussion of the court's prior constructions of the "signal interface" and "telephone exchange" claim terms. After that discussion, the court examined the intrinsic evidence to determine how the inventor defined the public trunk line in the patents and how that definition relates to those two claim terms.

In that opinion, the court noted that its "construction of 'signal interface' has both a location and a functional component. The location component is 'a device interposed on the opposite end (i.e., the local side) of the public trunk line (as defined by the inventor in the patent) from the telephone exchange . . . .' The functional component is 'a device . . . that performs the recited functions of the incorporated circuitry.'"[16] It is the location component of that construction with which defendants' joint motion is primarily concerned.

At the summary judgment stage, defendants asserted that "[t]he inventor defined the public trunk line as the communication path running from the telephone company central office . . . at one end to a point within or just outside a structure, where twisted pairs of telephone lines from individual residences, apartments, or offices converge, i.e., 'the point of convergence.'"[17]

---

[16] *Inline Connection, Corp. v. AOL Time Warner Inc.*, 364 F. Supp. 2d 417, 428-29 (D. Del.2005).
[17] *Id.* at 429 (quoting D.I. 271 at 3-4 (internal quotation marks omitted)). In footnote 71 of the Summary Judgment Opinion, which provided the citation for the above quote, the court also included additional direct quotations from defendants' summary judgment briefs that reiterated defendants' position regarding the public trunk line. Surprisingly, in its opposition to the joint motion, Inline seemingly cites

8

Inline argued, in part, that:

"[T]he patent divides the transmission path into two segments: the public
trunk . . . and the extended pairs . . . . *[I]t is the signal interface itself,
because of its function, that divides the telephone lines into the public
trunk segment and the extended pairs segment.* By definition, then, the
signal interface is at the 'local' end of the trunk. The 'public' end is on the
opposite side and connects to the switching center."[18]

The court disagreed with Inline's arguments regarding how the inventor defined

the public trunk line. The court's review of the common specification led to its

conclusion that the various elements of the telephone wiring network (i.e., the public

trunk line, extended pairs, and points of convergence at which the claimed "signal

interface" might be interposed) were existing elements of the telephone wiring network

which were not defined by the placement of the "signal interface."[19]

The court also disagreed with defendants' contention that the public trunk line

was defined by the inventor in the patents such that the claimed "signal interface" must

be placed at "a point within or just outside a structure," as the common specification's

description of extended pairs of varying lengths contradicted that position.[20]

In the Summary Judgment Opinion, the court stated that:

Based on the plain language of the patents, . . . the court determines that
the inventor defined the public trunk line in the patents as the telephone
twisted pairs, and any fiber optic line, traveling from the 'telephone
exchange' to an existing point of convergence at which the claimed 'signal
interface' may be interposed.[21]

footnote 71 of the Summary Judgment Opinion as the court's own statements, *see* D.I. 305 at 8, despite
the fact that the Summary Judgment Opinion cited to the Docket Index ("D.I.") number for defendants'
briefs for those quotations. More surprisingly, defendants' reply brief cites Inline's quotation of footnote
71, apparently also not recognizing their own words from prior briefing. *See* D.I. 312 at 6 n.2.

[18] *Id.* at 430 (quoting D.I. 257 at 7) (footnotes omitted).

[19] *Id.* at 432-34.

[20] *Id.* at 434-35.

[21] *Id.* at 436.

9

Defendants state that "[t]he final paragraph at the conclusion of section B of the Summary Judgment Order[, i.e, the just-quoted definition of public trunk line,] . . . might be interpreted to mean that the public trunk line ends at any point of convergence where a signal interface has been placed."[22]  Defendants contend, however, that:

> [S]uch an interpretation is flatly inconsistent with Sections A and B of the Court's Analysis in the Order, as well as the Markman Order, which make clear (1) that the public trunk line, the extended pairs, and the point of convergence at which they meet are all pre-existing parts of the telephone network and (2) that the public telephone trunk line is not defined by the placement of the signal interface.[23]

The court disagrees with defendants' conclusion, based on those assertions, that there is only one point of convergence at which the claimed "signal interface" may be interposed.  Defendants correctly note that the court stated:  "[t]he patent explains, '[t]he [signal] interface provided by the invention . . . replaces the *existing interface* between the public telephone network (i.e., an ordinary telephone trunk line) and the telephone lines that leads to individual residences.'"[24]  That statement, however, should not be taken to mean that the claimed "signal interface" may be interposed at one, and only one,  point of convergence.  As the court previously determined, placement of the claimed "signal interface" does not define the public trunk line and the extended pairs, which segments of the telephone wiring network the court also determined are described in the common specification as pre-existing structures.  Neither the Summary Judgment Opinion nor the common specification limit placement of a "signal interface"

---

[22] D.I. 301 at 6 n.1.
[23] *Id.* at 6-7 n.1.
[24] *Id.* at 2 (quoting *Inline*, 364 F. Supp. 2d at 432 (quoting '596 patent 8:9-13)).

10

to a single, particular point of convergence, as defendants request the court to rule on

their motion for reconsideration.

Defendants may confuse certain statements by the court as supporting their

single interface point theory. For instance, the court stated that:

> Because the 'signal interface' is interposed at a pre-existing point of
> convergence, the public trunk line running from the 'telephone exchange'
> to that point, and the extended pairs that run from that point to the local
> networks are also pre-existing structures and the specification consistently
> describes them as such. For example, the patents state, 'the . . .
> transceiver/switch [i.e., the claimed 'signal interface,'] . . . . is connected to
> multiple pairs of telephone wire pairs from the local telephone exchange
> (the trunk line) and the extended telephone wire pairs leading to separate
> local networks of telephone wiring.[25]

That statement, and the additional statement recited in footnote 25 of this

opinion, do not, however, limit the '596 patent's coverage to only a single point of

convergence. Those quotes merely express the court's determination that the public

trunk line, extended pairs, and points of convergence are pre-existing elements of the

telephone wiring network and, as such, contradicted Inline's argument that the

placement of a "signal interface" defined the public trunk line and the extended pairs.

Because those elements are described in the common specification as pre-existing

structures, the court rejected Inline's related argument that the patent covered a

DSLAM located within the "telephone exchange." Those quotes were not meant to

indicate that the court determined that the common specification supports only a single

---

[25] *Inline*, 364 F. Supp. 2d at 434 (quoting '596 patent 9:1-6); *see also, e.g., id.* at 432 ("The
patents explain, '[t]he [signal] interface provided by the invention . . . replaces the existing interface
between the public telephone network (i.e., an ordinary telephone trunk line) and the telephone lines that
lead to individual residences.' The telephone lines that lead from the existing interface, or point of
convergence, to the individual residences (i.e., to the local networks) are the extended pairs." (quoting
'596 patent 8:9-13) (footnote omitted)).

11

point of convergence at which the claimed "signal interface" may be interposed.[26]  More
importantly and as explained below, the common specification, from which the court
quoted extensively in the Summary Judgment Opinion, also contradicts that argument.

The court determined that the patent merely requires that the claimed "signal
interface" be interposed at a pre-existing point of convergence on the local side of the
public trunk line.[27]  The court noted that "[t]he common specification lists several points
of convergence at which the claimed 'signal interface' may be interposed" and that:

[T]he specification states that "[t]he present invention relates to a system
for simultaneous two-way communication of video signals and other
signals between multiple networks of telephone wiring *whose twisted pairs
converge together into a single bundle, wiring block, or other common
points of access*, and a high capacity communication line located at that
point of access."[28]

The court quoted several examples from the common specification reciting

various points of convergence.  In particular, the court quoted the common specification

which states that:

"In the case of apartment buildings, the point of access can be *the 'wiring
closets'* found in those buildings. . . .  [T]he twisted pairs providing
telephone service to the units of an apartment building often converge *in a
room in the basement of such a building*, providing a point of common
access to a large number of units. *Other 'common points of access'* often
available in an apartment building are the *wiring closets* that are often
located on every floor."[29]

---

[26] *Cf. id.* at 432 ("[T]he public trunk line, the extended pairs and the *points* of convergence (where
the claimed 'signal interface' may be interposed) are described as existing elements of the telephone
wiring network." (emphasis added)).

[27] The Summary Judgment Opinion made clear that the court's construction of "signal interface,"
and the requirement that a point of convergence must be on the local side of the public trunk line,
"distinguishes the 'local side' from the '"telephone exchange" side' of the public trunk line; 'a device
interposed on *the opposite end (i.e., the local side)* of the public trunk line . . . *from the telephone
exchange.'*" *Id.* at 432 n.81.  An understanding of this distinction also explains why a DSLAM located
within a "telephone exchange" does not infringe under the court's construction of "signal interface."

[28] *Id.* at 432-33 (quoting '596 patent 1:23-28).

[29] *Id.* at 433 (quoting '596 patent 1:36-37; 63:6-12) (footnote omitted).

Defendants' single point of convergence argument would result in the '596 family

of patents not covering "signal interfaces" being placed in the wiring closet of an

apartment building, as well as, at other points of convergence in wiring closets on

different floors of such building.  This is so because, under defendants' interpretation,

those several points of convergence, at different intermediate points on the extended

pairs, could not meet their argued-for interpretation of the court's "signal interface"

construction (which includes the inventor's definition of public trunk line) as requiring a

single point of convergence at the boundary of the public trunk line and the extended

pairs.  That argument is, therefore, inconsistent with the language of the common

specification.

The apartment building embodiment was also noted in the court's discussion of

the parties' literal infringement arguments as they related to the location component of

the court's "signal interface" construction:

> The fact that there may, or may not, be additional points of convergence
> downstream from a remote terminal also does not mean that the wires
> traveling from a remote terminal to another point of convergence are not
> extended pairs.  The common specification provides an example of
> multiple, or intermediate, points of convergence interposed on the same
> set of extended pairs in the description of an apartment building
> implementation. . . .  Nothing has been cited to the court to indicate that
> instances of intermediate points of convergence are limited to [the
> apartment building] embodiment . . . .[30]

Apart from excluding the specifically recited apartment building embodiment from

the patent's coverage, a result that is "rarely, if ever, correct,"[31] defendants' position

---

[30] *Id.* at 440-41.

[31] See *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (stating that a construction that excludes a preferred embodiment "is rarely, if ever, correct and would require highly persuasive evidentiary support."); see also *Applera Corp. v. Micromass UK Ltd.*, 186 F. Supp. 2d 487, 504-08 (D. Del. 2002) (rejecting proposed construction that would read out preferred embodiment

13

would impermissibly narrow the scope of the patent by excluding other pre-existing

intermediate points of convergence.[32]

Defendants concede that "[t]here are multiple points of convergence on the

public telephone network between the user's residence and the central office,"[33] and

cite a textbook, "DSL Advances," (also cited by Inline in its summary judgment briefing)

detailing those multiple points of convergence. Defendants state that "DSL Advances":

> [S]hows multiple points of convergence between a particular user's
> residence and the central office, including the point of convergence where
> multiple "drop lines" from residences connect with "distribution cables" at
> telephone poles or wiring pedestals and the point of convergence where
> multiple distribution cables then connect with "feeder cables" that run to
> the central office.[34]

Defendants argue, however, that only one of these existing points of

convergence is the one at which the claimed "signal interface" may be interposed.

Defendants contend that "[t]he final paragraph at the conclusion of section B of the

Summary Judgment Order . . . might be interpreted to mean that the public trunk line

ends at any point of convergence where a signal interface has been placed" but argue

such an interpretation is inconsistent with other parts of the court's Summary Judgment

Opinion, as they interpret that opinion.[35] As explained above, however, the inventor's

definition of public trunk line does not exclude the possibility that there are multiple

---

illustrated in figure).

[32] The apartment building embodiment also contradicts defendants' assertion that the multiple points of convergence recited in the patent, e.g., a 'punch-down' panel, a telephone pole, a pedestal, or a wiring closet, simply mean that different users may be connected to the public trunk line via different *types* of points of convergence. D.I. 312 at 7. The "wiring closets that are often located on every floor" of an apartment building are undisputably *multiple* points of convergence of the same *type* along the same set of extended pairs.

[33] D.I. 301 at 7.

[34] *Id.* at 7-8.

[35] *Id.* at 6 n.1.

14

points of convergence at which the claimed "signal interface" may be interposed. Rather than redefining the pre-existing public trunk line and extended pairs segments of the telephone wiring network, the court determined that the common specification describes some of those as intermediate points of convergence on the extended pairs. A "signal interface" at one of those pre-existing intermediate points of convergence does not, as defendants argue, redefine the also pre-existing public trunk line or extended pairs. To reiterate, "[n]othing has been cited to the court to indicate that instances of intermediate points of convergence are limited to [the apartment building] embodiment . . . ."[36]   Furthermore, placement of the claimed "signal interface" at any of those points of convergence also meets the functional component of the court's construction of that term by "prevent[ing] high frequency signals from being transmitted onto the public trunk line and back to the 'telephone exchange.'"[37]

Consequently, the court disagrees with defendants' premise that the summary judgment opinion limits the '596 family of patents to covering only a "signal interface" interposed at one of the multiple points of convergence on the local side of the public trunk line. The court has reiterated portions of the common specification supporting its rejection of defendants' argument and finds no conflict with that rejection and the inventors' definition of public trunk line gleaned from the common specification. Because the court finds no clear error of fact in need of correction, nor has the court patently misunderstood the parties' arguments or made an error of apprehension, the

---

[36] *Inline*, 364 F. Supp. 2d at 441.
[37] *Id.* at 436.

15

joint motion is denied.[38]

## B.   THE AOL MOTION

In its reply brief, AOL frames the issue for reconsideration of its motion as:
"whether Inline presented sufficient evidence in the summary judgment record to raise a
genuine issue of fact as to whether AOL actually provides ADSL service to subscribers
via leased lines from a telephone company that utilizes DSLAMs located in remote
terminals."[39] In the Summary Judgment Opinion, the court concluded that a genuine
issue of fact was raised by the evidence before the court and, for the reasons explained
below, that conclusion remains unchanged.

As an initial matter, the court has determined not to consider those additional
materials submitted by Inline with its briefing on the AOL motion which were not part of
the summary judgment record. It is improper to consider such additional materials on a
motion for reconsideration.[40] Furthermore, the court declines Inline's invitation to
convert the AOL motion to a new motion for summary judgment in order to properly
consider its additional evidence.

AOL argues that the court erroneously considered the evidence presented
cumulatively and that the court relied on a single document pertaining directly to AOL, a

---

[38] Defendants have not suggested there has been an intervening change in controlling law, that
new evidence has become available, or that the court has made a decision outside of the adversarial
issues presented to the court by the parties (those several other bases on which a court might grant a
motion to reconsider under Fed. R. Civ. P. 59(e) or Delaware Local Rule 7.1.5).

[39] D.I. 313 at 1.

[40] *See Stairmaster Sports/Medical Prods. v. Groupe Procycle, Inc.*, 25 F. Supp. 2d 270, 292 (D.
Del. 1998) ("[W]hile the parties followed Local Rule 7.1.5 by keeping the briefs relatively short, they filed
no less than four 'declarations' containing a minimum of 16 exhibits, the majority of which were not part of
the summary judgment record. A motion for reargument cannot be used as a vehicle to supplement the
record put before the Court prior to its decision on summary judgment. If the rule were otherwise, finality
of summary judgment rulings would be nothing more than a never to be attained fond dream.").

16

"Ticket Checklist" produced by AOL, in determining that there is a triable issue of fact.

Because AOL contends that the "Ticket Checklist" is unauthenticated hearsay

evidence, it argues that there is no competent evidence upon which a reasonable jury

could conclude that AOL subscribers are provided ADSL service.  AOL, therefore,

requests that the court reconsider its summary judgment order and grant AOL's motion

for summary judgment of non-infringement.

In support of its argument, AOL emphasizes the court's statement in the

Summary Judgment Opinion that:

> Inline has presented evidence demonstrating that phone companies are
> increasingly employing DSLAMs in remote terminals for use by ADSL
> providers.  Inline has also elicited testimony from defendants
> acknowledging that ADSL service may be provided through a DSLAM at a
> location other than a central office.  The fact that phone companies
> provide ADSL access via DSLAMs located in remote terminals, and
> defendants['] acknowledgment of that fact, is not sufficient evidence to
> establish, as a matter of law, whether defendants' subscribers actually
> utilize ADSL lines from remote terminals.[41]

AOL attaches far greater significance to the final sentence of that quotation than

was intended by the court.  Based on the evidence concerning telephone companies'

providing ADSL access via DSLAMs in remote terminals, and related testimony

regarding that service, the court determined that such evidence was not sufficient to

hold, as a matter of law, that defendants' subscribers actually utilize ADSL lines from

remote terminals.  Therefore, the court could not *grant* Inline's motion for summary

judgment of infringement based on that evidence.  The court did not state that that

evidence was insufficient to raise a material question of fact.

---

[41] *Inline*, 364 F. Supp. 2d at 437-38 (footnotes omitted).

17

Rather than holding that such evidence raised a material question of fact and denying each parties' cross summary judgment at that point in the opinion, the court then considered other evidence presented by Inline to determine if that additional evidence was sufficient to establish, as a matter of law, that defendants' infringe Inline's patents. The court discussed evidence specific to each defendant and determined that, even with this additional evidence, there was still a question of fact regarding whether defendants' subscribers utilize ADSL lines from remote terminals.

AOL argues that the "Ticket Checklist" produced by AOL, and cited by the court, is unauthenticated hearsay which would be inadmissible at trial. It is unnecessary for the court to make a determination of the parties' arguments concerning the propriety of the court's consideration of that document, however, because a question of fact concerning the service AOL provides to its subscribers exists based on evidence, and AOL's acknowledgment, that AOL provides industry standard ADSL via lines leased from phone companies, which phone companies employ remote terminal DSLAMs.[42]

---

[42] *See, e.g.,* D.I. 251 at 4 (Defendants' Joint Revised Motion for Summary Judgment ("ADSL is an industry-standard service offered by various telephone companies such as Verizon and BellSouth. Both AOL and EarthLink lease ADSL lines from telephone companies, which AOL and Earthlink then assign to their respective ADSL customers.")); *Inline,* 364 F. Supp. 2d at 437-38. AOL's incorrect assumption that the "Ticket Checklist" was the sole piece of evidence relied upon by the court in determining that a question of fact exists as to AOL's ADSL service is likely the result of a statement by the court following its determination that evidence concerning telephone companies' implementation of DSLAMs in remote terminals for use by ADSL providers was insufficient to hold, as a matter of law, that Earthlink and/or AOL provide such service via remote terminal DSLAMs.  That statement was that "Inline has, however, presented other evidence which raises a question of fact as to whether defendants provide ADSL service via a DSLAM located at a remote terminal." *Id.* at 438. Following that sentence is a discussion of certain evidence, including the "Ticket Checklist." That sentence, rather than indicating the basis for the court's determination that a question of fact exists, was meant to contrast evidence "suggest[ing] that defendants' ADSL service is only provided via central-office DSLAMs." *Id.* The court also notes that, although the "Ticket Checklist" is not evidence necessary for the court's determination of the AOL motion, at oral argument, AOL did not raise any objection to the competency of that document which was cited by Inline in its reply brief in support of its motion for partial summary judgment; a brief filed over six months prior to oral argument. *See* D.I. 275 at 19 n.14 ("Moreover, AOL and Earthlink have both produced documents related to problems and their procedures for dealing with subscribers served through remote terminals."

The court determined that, giving each of the non-movants the benefit of all reasonable inferences with regard to the evidence adduced in support of their competing summary judgment motions, "a question of fact remains as to whether defendants provide ADSL service to their subscribers via remote location DSLAMs, defendants' motion is denied with respect to such implementation. For the same reason, Inline's motion for summary judgment with respect to the 'signal interface' claim element is also denied."[43]

The court determined that the evidence presented during the summary judgment stage is sufficient to raise a triable issue of fact. After review of that evidence, the court does not find that it made a clear error of law on this point. Finding no other grounds upon which to grant AOL's motion to reconsider, the court denies that motion.

## V. CONCLUSION

For the reasons stated above, defendants' joint motion and the AOL motion are denied.[44]

---

(citing the "Ticket Checklist" with regard to AOL)).

[43] *Inline*, 364 F. Supp. 2d at 448.

[44] The court previously cautioned, in its prior opinion modifying the construction of a the "high frequency" claim term of the patents-in-suit that "[t]his opinion is not intended to be, nor should it be, viewed as an invitation for a disappointed party to seek 'a second bite at the apple' through motions for reargument and/or reconsideration anytime the court determines an issue contrary to the result advocated by a party." *Inline Connection, Corp. v. AOL Time Warner Inc.*, 347 F. Supp. 2d 56, 63 n.39 (D. Del. 2004). It seems as if the litigants are coming perilously close to completely consuming the apple of this litigation through motion practice. After over three years since the filing of this suit, it is hoped that the parties, as well as the court, may now proceed to a timely resolution of this matter.

19