## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION,<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | C. A. No. 02-272-MPT |
| AOL TIME WARNER INCORPORATED,<br>et al.,<br>Defendants. | )<br>)<br>)<br>)<br>) | |
| INLINE CONNECTION CORPORATION,<br>Plaintiff, | )<br>)<br>) | |
| v. | ) | C. A. No. 02-477-MPT |
| EARTHLINK, INC.,<br>Defendant. | )<br>)<br>) | <u>Consolidated Cases</u> |

FILED
OCT 5 2006
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

### MEMORANDUM ORDER

This is a patent infringement case. Inline Communication Corporation ("Inline") sued America Online Inc.'s ("AOL") on April 12, 2002, and EarthLink, Inc.'s ("EarthLink") on June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"), 6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[1]

On August 15, 2006, Inline submitted a letter brief requesting leave for further briefing on its motion for sanctions against AOL and EarthLink for purported violations of discovery obligations. Inline argues that AOL and EarthLink were obligated to produce documents regarding the deployment of self-install ADSL to subscribers through Remote Terminals ("RT") in the possession and custody of third parties, the telephone companies ("telcos"). Inline contends such documents were within the

---

[1] Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to this litigation.

"control" of AOL and EarthLink. On August 18, 2006, AOL and EarthLink responded asking the court to deny Inline's request because the deployment documents at issue were not within their control, and therefore, they had no production obligation under the discovery rules.

Rule 34 (a) of the *Federal Rules of Civil Procedure* states, in pertinent part that, "any party may serve on any other party a request (1) to produce. . . to inspect any designated documents. . . which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or *control* of the party upon whom the request is served." (emphasis added). Rule 34(a) provides the court authority over a party-litigant to order the production of documents which are held in the joint-control of a party-litigant and a third party. *Power Integrations, Inc, v. Fairchild Semiconductor Int'l, Inc.*, 233 F.R.D. 143, 146 (D. Del. 2005). Though broadly construed, the party seeking production bears the burden of establishing control. *Playboy Entm't Group, Inc. v. United States*, Civ. No. 96-94-JJF, 1997 U.S. Dist. LEXIS 22297, *1 (D. Del. Dec. 11, 1997).

For the reasons discussed below, the court is not satisfied that Inline has provided sufficient evidence which establishes AOL and EarthLink's legal control of the deployment information. Therefore, further briefing is not needed and Inline's request is denied.

In the context of F.R.C.P. 34(a), the Third Circuit defines "control" as the "legal right to obtain the documents required on demand." *Power Integrations, Inc.*, 233 F.R.D. at 145 (quoting *Gerling Int'l Ins. Co. v. Comm'r of Internal Revenue*, 839 F.2d

2

131, 140 (1998)).

Inline cites to language in the Third Circuit's opinion in *Mercy Catholic Med. Ctr. v. Thompson*, as support for its position that the "practical ability" to obtain documents is the same as legal control. 380 F.3d 142, 160 (3d Cir. 2004) ("[A]s long as the party has the legal right or ability to obtain the documents from another source upon demand, that party is deemed to have control."). In that case, the plaintiff provided documents concerning medical education and operating costs to a subcontractor audit firm rather than to its fiscal intermediary, Independence Blue Cross ("Blue Cross"). *Id.* at 159. The Third Circuit relied on the principal-agent relationship in determining that the documents in question were "plainly within [the] control" of Blue Cross. *Id.* at 160. The court reasoned that, because Blue Cross employed the subcontractor audit firm as its agent, it had the "express right" to obtain the documents upon demand. *Id.* at 161. *Mercy Catholic* examined a party's control over documents specifically in the context of the principal-agent relationship. It did not address the issue of document production as between two independent corporations who conduct business at arms length, as is the case between AOL and EarthLink and the telcos. Therefore, the mere fact that defendants obtained deployment information does not in of itself establish legal control of the documents under the discovery rules.

Next, Inline contends that the language of *Gerling Int'l Ins. Co. v. Internal Revenue Service*, 839 F.2d 131 (3d Cir. 1988), shows that the Third Circuit has not completely rejected the "practical ability" approach. In *Gerling*, the court cited to the Second Circuit case of *First Nat'l Bank v. Internal Revenue Service*, 271 F.2d 616 (2d

Cir. 1959), in a parenthetical, for the proposition that where a *subsidiary* corporation is able to secure documents for either business or litigation needs from the parent corporation, that subsidiary may not subsequently deny control of those documents during discovery to prevent opposing litigants from obtaining them. *Id.* at 141. In *First Nat'l Bank*, the Internal Revenue Service ("IRS") served First National Bank ("Bank") with a summons to produce bank records for a Panamanian corporation whose accounts were under investigation. *Id.* at 616. The Bank produced documents from its New York City branch, but refused to produce records from its Panama branch, stating that those documents were "not in their control." *Id.* at 618. The court rejected the Bank's argument and ordered the production of the Panamanian Bank records for two reasons. First, it found that the Bank in fact exercised actual, practical control of the branch's records. *Id.* Second, the court emphasized that where an officer or agent of a corporation has the power to send branch records to the home office for any corporate or business purpose, it "surely has sufficient control to cause them to be sent on when desired for a *governmental purpose* properly implemented by a subpoena under 26 U.S.C. Section 7602." *Id.* (emphasis added).

In footnote four of their letter, Inline contends that the law of the Third Circuit is no different from the law of the Second Circuit, as evidenced by *Gerling's* reference to *First Nat'l Bank*. This proposition is wholly unsupported. *First Nat'l Bank* does not support Inline's theory for the following reasons. Inline is not a government entity requesting documents pursuant to statutory authority. In addition, the telcos and defendants do not have a parent-subsidiary relationship. Though *First Nat'l Bank* is not

controlling on this court, it emphasizes that the existence of a parent-subsidiary relationship is a prominent factor in determining "legal control" over documents, especially where government interests are involved. Its reference in *Gerling* is not, as Inline suggests, legal authority that the Third Circuit has accepted the "practical ability" approach towards document production in the context of Rule 34(a), especially as between competing corporations. In fact, the *Gerling* court expressly emphasized that the Third Circuit defines control as "the legal right to obtain the documents required on demand." *Gerling*, 839 F.2d at 140. More importantly, Inline's assertion that the law of the Third Circuit does not reject the Second Circuit's "practical ability" approach is clearly contradicted by *Power Integrations, Inc.* In that case, Judge Farnan specifically relied on *Gerling's* definition of control by finding that "this Court is not persuaded that the Third Circuit has adopted as expansive a definition of 'control' as. . . used. . . in the Second Circuit. Cases in the Second Circuit go beyond defining 'control' as the *legal right* of the subpoenaed party to obtain the documents and include an inquiry into the *practical ability* of the. . . party" to obtain the documents. 233 F.R.D. at 146. (emphasis in original) (*See e.g. Riddell Sports Inc. v. Brooks*, "[i]f the producing party has the legal right or the *practical ability* to obtain the documents, then it is deemed to have "control." 158 F.R.D. 555, 558 (S.D.N.Y. 1994)). Moreover, as AOL and EarthLink point out, the cases in the Second Circuit applying the practical ability approach generally occur in the context of a parent-subsidiary relationship where the documents were readily accessible to a parent corporation or used by a subsidiary, in the ordinary course of business. *Power Integrations, Inc.*, 233 F.R.D. at 146. *See In re Flag Telecom Holdings, Ltd. Securities Litig.*, No. 02 Civ. 3400, 2006 U.S. Dist. LEXIS 22528 (S.D.N.Y. Apr. 19,

2006) (involving corporate officer-company relationship). Therefore, even if the law of the Second Circuit applied in this case, Inline's argument still fails because AOL and EarthLink do not have a parent-subsidiary relationship with the telcos.

In the case of two *independent* corporate entities, as is the situation between AOL and EarthLink and the telcos, production of documents would only occur when the respective business operations of each independent entity are "so intertwined as to render meaningless" their distinct corporate identities. *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 395 (D. Del. 2002) (quoting *Pennwalt Corp. v. Plough, Inc.*, 85 F.R.D. 257, 263 (D. Del. 1979)). In *Novartis*, the court denied Novartis' motion to compel Eon to produce all documents contained in the "Hexal file." *Id.* at 395. The Hexal file, owned by AG, a non-party German corporation, contained technical information used for product development. *Id.* Although Eon had a licensing agreement with AG to use that technical information, Novartis' argument that the licensing agreement established Eon's "control" of the Hexal file was rejected. *Id.* Rather, the court explicitly held absent a showing that the business operations of Eon and AG are "so intertwined as to render meaningless their separate identities," Novartis' motion to compel was outside the scope of Rule. 34. *Id.*

In the present case, there is no evidence which suggests that AOL and EarthLink had possession or custody of the RT deployment information. Rather, the gist of Inline's argument is that AOL and EarthLink did not satisfy their discovery obligations by producing information which was purportedly "available" to them upon request from the telcos. Inline apparently relies on deposition testimony of AOL's damages, expert Julie Davis. According to Ms. Davis, hypothetically, AOL could have obtained the RT

deployment information from the telcos by making it part of their contractual relationship. See Tr. Julie Davis, July 14, 2006, at 170. The fact that AOL hypothetically could have pursued a contractual provision during negotiations which provides AOL a right of access to RT deployment information is irrelevant to the determination of whether AOL and EarthLink presently have or had legal control of the RT deployment information because there is no evidence that such a contractual provision exists. Moreover, Ms. Davis testified that AOL itself does not maintain information regarding RT deployment. She further commented on how AOL would calculate "a royalty base that reflected only infringing use when that [RT deployment] information was not maintained in the course of business at AOL." Id. at 179. Inline also relies on deposition testimony by EarthLink's damages expert, Mark Gallagher. According to Mr. Gallagher, EarthLink employees could find out in advance of a sale whether or not an ADSL customer will be provisioned through a remote terminal. Tr. Mark Gallagher, July 18, 2006, at 91-93. However, under the law of the Third Circuit, the mere fact that EarthLink may be able to obtain the information if it had a business or other reason to do so is irrelevant to the issue of control. Rather, the pertinent issue is whether AOL and EarthLink have the legal *right* to obtain the information at issue.

AOL and EarthLink do not have the legal right to demand RT information from the telcos. AOL and EarthLink deal on a competitive, arms length basis with the telcos. This is evidenced by the fact that only three telcos, Covad, BellSouth, and Verizon, voluntarily provided information relating to the number of central office versus RT ADSL lines to AOL and EarthLink. Two telcos, SBC and Qwest, refused to provide the information. Those facts evidence that the business operations of the telcos and AOL

and EarthLink are not so intertwined as to evaporate their separate corporate identities.

Inline points to AOL's 2001 agreement with Qwest which provides that, "where feasible and upon request of AOL, Qwest will identify loop qualified homes by central office and remote terminal to assist AOL in its marketing efforts." However, Qwest ultimately refused to provide the RT deployment information to AOL. Moreover, as noted in *Novartis*, a contract provision which merely authorizes the party litigant's access to information that is in the possession of a non-party, without more, is insufficient to establish legal control in the Third Circuit.

For all of the foregoing reasons, there is insufficient evidence which demonstrates, under the law of the Third Circuit, as set forth by *Gerling* and *Power Integrations, Inc.*, that AOL and EarthLink exercised legal control of the information at issue. Therefore, no obligation to produce such information during discovery has been shown. As a result, Rule 37 does not apply, and Inline's Motion to Compel is denied.

Date: October 5, 2006

_____
United States Magistrate Judge