## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, <br>        Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | C. A. No. 02-272-MPT |
| AOL TIME WARNER INCORPORATED, et al., <br>        Defendants. | ) ) ) ) | |
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, <br>        Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | C. A. No. 02-477-MPT |
| EARTHLINK, INC., <br>        Defendant. | ) ) ) | Consolidated Cases |

### MEMORANDUM OPINION

Thomas C. Grimm, Esquire and Julia Heaney, Esquire, Morris, Nichols, Arsht & Tunnell LLP, 1201 N. Market Street, P.O. Box 1347, Wilmington, Delaware 19899-1345.
    Of Counsel: Ky E. Kirby, Esquire, and C. Joël Van Over, Esquire, Bingham
    McCutchen LLP, Washington, D.C., James B. Lewis, Esquire, Bingham
    McCutchen LLP, Palo Alto, CA, Donn P. Pickett, Esquire, Bingham McCutchen
    LLP, San Francisco, California;
Counsel for Plaintiffs Inline Connection Corporation, Broadband Technology
Innovations, LLC and Pie Squared, LLC.

Frederick L. Cottrell, III, Esquire, and Kelly E. Farnan, Esquire, Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899;
    Of Counsel: Robert J. Gunther, Jr., Esquire and Kurt M. Rogers, Esquire,
    Latham & Watkins LLP, New York, New York, David A. Nelson, Esquire, Latham
    & Watkins LLP, Chicago, Illinois;
Counsel for Defendant America Online, Inc.

Gary W. Lipkin, Esquire, Duane Morris LLP, 1100 North Market Street, 12th Floor,

Wilmington, Delaware 19801.

Of Counsel: L. Norwood Jameson, Esquire and Matthew C. Gaudet, Esquire,
Duane Morris LLP, Atlanta, Georgia;
Counsel for Defendant EarthLink, Inc.

January 8, 2007

Thynge, U.S. Magistrate Judge

## I. INTRODUCTION

This is a patent infringement case.  Inline Communication Corporation[1] ("Inline")
sued America Online Inc. ("AOL") on April 12, 2002, and EarthLink, Inc. ("EarthLink") on
June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"),
6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[2]

Inline filed two separate motions requesting that the court preclude defendants'
invalidity expert, David L. Waring, from offering certain testimony at trial.  Inline's first
motion is directed at Waring's April 18, 2006 expert report (the "April 18 Report")
reciting his opinions of lack of enablement and obviousness.[3]  Inline contends that the
opinions recited therein are the product of improper standards and unreliable methods.
Inline's motion directed to the April 18 Report will be addressed in a separate opinion.
Inline's second motion is directed at Waring's October 20, 2006 supplemental expert
report (the "Supplemental Report"), which Inline argues should be excluded as untimely
and prejudicial.[4]  For the reasons discussed, Inline's motion to exclude the
Supplemental Report and testimony related thereto from trial will be granted in part and
denied in part.

## II. POSITIONS OF THE PARTIES

On April 18, 2006, defendants served Waring's expert report, which included

---

[1] Inline initially sued AOL and Earthlink.  Since the original filing of the complaints, other plaintiffs
have been added because of their contractual relationships with Inline.  For ease of reference, all plaintiffs
shall be referred to as Inline.
[2] Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to the litigation
after it was issued in 2003.  The '718 patent is no longer at issue in the litigation.
[3] D.I. 524 (Plaintiffs' Motion to Exclude Certain Testimony Relating to the Expert Report of David
L. Waring).
[4] D.I. 526 (Plaintiff's Motion to Exclude Testimony relating to the  Supplemental Expert Report of
David L. Waring).

opinions concerning, among other things, the defense of invalidity.  On June 30, 2006, Inline responded by submitting a rebuttal expert report by Dr. William Beckmann. Subsequently, the parties deposed both individuals, with the final day of depositions completed on the date expert depositions were to have been completed, July 21, 2006.[5] On October 20, 2006, subsequent to the October 16, 2006 date motions seeking to limit or exclude expert testimony were originally due,[6] and a week prior to the extended deadline for filing of those motions,[7] defendants served the Waring's Supplemental Report reciting invalidity opinions based on two additional prior art references.[8]

Inline complains of the timing of this filing, and defendants' failure to seek leave of the court for its filing.  Inline moves for the exclusion from trial of the Supplemental Report and any testimony about the information and opinions contained therein.  Inline contends that the Supplemental Report is based on two prior art references that have never before been raised by defendants.  Since discovery in this case is closed, Inline has had no opportunity to conduct discovery necessary to challenge Waring's newly-raised assertions of invalidity.  Therefore, Inline contends that testimony regarding the Supplemental Report will substantially prejudice its right to a fair trial and should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1) and Federal Rule of Evidence 403.

---

[5] D.I. 392 (Amended Scheduling Order).

[6] Id.

[7] D.I. 505 (Stipulation for Extension of Time).

[8] D.I. 547, Ex. 1 (Supplemental Expert Report of David L. Waring Regarding the Invalidity of U.S. Patents Nos. 5,844,596, 6,243,446, and 6,542,585).  The two new prior art references are: (1) A.H. Ithell and W.G.T. Jones, *A Proposal for the Introduction of Digital Techniques into Local Distribution*, Proceedings of the International Zurich Seminar on Digital Communications (March 7-9, 1978) (the "Ithell & Jones Article"); and (2) the AT&T Voice Data Multiplexer system (the "VDM System").

2

Defendants contend that despite diligent effort to locate relevant prior art, they were not aware of the two new references prior to serving Waring's April 18 Report. They first learned of those references when provided courtesy copies by Verizon Internet Services, Inc. ("Verizon"), who had produced them to Inline in separate litigation involving the patents-in-suit pending before another judge in this court.[9] Defendants assert that upon receipt of those references, Waring and defendants evaluated them and promptly served the Supplemental Report.  Defendants characterize Inline's motion as effectively one to sanction defendants for failing to find the "proverbial needle in the haystack."  Defendants maintain that Inline ignores the fact that finding prior art is often an extremely difficult exercise, particularly in a case such as this where prosecution of the patents-in-suit continued for many years, thereby complicating the location of prior art.  Defendants assert that the two new references are important to presentation of their invalidity defenses.  Finally, defendants argue that Inline ignores the Federal Rules of Civil Procedure and precedent from the Third Circuit Court of Appeals which, they maintain, provides for supplemental expert disclosure based on newly discovered information.

## III. DISCUSSION

The Supplemental Report recites Waring's opinions that the Ithell & Jones Article and the VDM System invalidate the claims of the patents-in-suit.  Inline argues that the Supplemental Report is untimely and permitting Waring's testimony of the opinions

---

[9] *Inline Connection Corp. v. Verizon Internet Servs., Inc.*, District of Delaware Civil Action No. 05-866 (JJF).  That case was partially stayed on April 13, 2006 pending the outcome of this case.  05-886 (JJF), D.I. 92.

3

contained therein will greatly prejudice its ability to prepare for trial and, therefore, such

testimony should be excluded.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to "contain

a complete statement of all opinions to be expressed and the basis and reasons

therefore."  Rule 26(a)(2)(C) states that "[t]he parties shall supplement these

disclosures when required under subdivision (e)(1)."  Rule 26(e)(1) states that:

> A party who has made a disclosure under subdivision (a) . . . is under a
> duty to supplement or correct the disclosure or response to include
> information thereafter acquired if ordered by the court or in the following
> circumstances:  (1) A party is under a duty to supplement at appropriate
> intervals its disclosures under subdivision (a) if the party learns that in
> some material respect the information disclosed is incomplete or incorrect
> and if the additional or corrective information has not otherwise been
> made known to the other parties during the discovery process or in
> writing.  With respect to testimony of an expert from whom a report is
> required under subdivision (a)(2)(B) the duty extends both to information
> contained in the report and to information provided through a deposition of
> the expert . . . .

Federal Rule of Civil Procedure 37(c)(1) states, "[a] party that without substantial

justification fails to disclose information required by Rule 26(a) . . . is not, unless such

failure is harmless, permitted to use as evidence at a trial . . . ."

The determination of whether to exclude evidence is committed to the court's

discretion.[10]  The Third Circuit has noted, however, that:

> While evidentiary rulings are generally subject to a particularly high level
> of deference because the trial court has a superior vantage point to
> assess the evidence . . . , evaluating the reliability of scientific
> methodologies and data does not generally involve assessing the
> truthfulness of the expert witnesses and thus is often not significantly
> more difficult on a cold record.  Moreover, here there are factors that
> counsel in favor of a hard look at (more stringent review of) the district

---

[10] *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

4

court's exercise of discretion. For example, because the reliability
standard of Rules 702 and 703 is somewhat amorphous, there is a
significant risk that district judges will set the threshold too high and will in
fact force plaintiffs to prove their case twice. Reducing this risk is
particularly important because the Federal Rules of Evidence display a
preference for admissibility.[11]

The Third Circuit also noted that "'the exclusion of critical evidence is an

'extreme' sanction, not normally to be imposed absent a showing of willful deception or

'flagrant disregard' of a court order by the proponent of the evidence,'"[12] and identified

several factors for the court to consider in deciding whether to exclude testimony:

(1) the prejudice or surprise in fact of the party against whom the excluded
witnesses would have testified, (2) the ability of that party to cure the
prejudice, (3) the extent to which waiver of the rule against calling unlisted
witnesses would disrupt the orderly and efficient trial of the case or of
other cases in the court, and (4) bad faith or willfulness in failing to comply
with the district court's order.[13]

The Third Circuit also stated that "'the importance of the excluded testimony' should be

considered."[14]

Expert reports on which each party bears the burden of proof were exchanged

on April 18, 2006, rebuttal reports were exchanged on June 30, 2006. On July 11,

2006, defendants sent a letter to Inline stating that the previous day they had received

from Verizon certain documents previously unknown to them and that, based on an

initial review of those documents, the documents appeared to be prior art relevant to

the validity of the patents. The letter stated that "[w]e reserve the right to supplement

---

[11] *Id.* at 749-50 (citation omitted).
[12] *Id.* at 791-92 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905
(3d Cir.1977)).
[13] *Paoli*, 35 F.3d at 791.
[14] *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers,* 559
F.2d at 904).

Defendants' expert report regarding the invalidity of the patents-in-suit based on these materials."[15]  Inline did not respond to that letter.[16]  Waring was deposed on July 18 and 19, 2006 and all expert depositions were completed on July 21, 2006.  On October 20, 2006, defendants served the Supplemental Report.

Inline argues that the delay in serving that report, and consequent prejudice to its trial preparation is sufficient grounds for the court to exclude Waring's testimony concerning the opinions contained therein.  Defendants explain the that the time of receipt of the new references caused any delay in filing the Supplemental Report, not because of any dilatory or bad faith motives.  On July 10, 2006, Verison produced invalidity disclosures to Inline which included documents relating to the VDM System.  Those are the documents referenced in defendants' July 11, 2006 letter to Inline.  Defendants had not previously been aware of the VDM System nor seen the VDM System documents produced by Verizon to Inline.  Defendants state that the VDM System includes the elements of the inventions described in the patents-in-suit, but that the documents they received on July 10, 2003 did not contain details of a remote terminal implementation of that system.  Defendants maintain that it was not until receiving a copy of the report of Arthur B. Williams, one of the designers of the VDM System, dated October 15, 2006, that they and Waring had the complete picture of exactly how the VDM System remote terminal implementation worked.  According to defendants, without Williams' report, Waring could not have opined in detail as to that implementation.  The Supplemental Report was served less than a week after

---

[15] D.I. 528, Ex. D (July 11, 2006 Letter from Claus D. Melarti to Ky E. Kirby).
[16] D.I. 546 at 10.

6

defendants' received Williams' report.

On September 13, 2006, Verizon produced the Ithell & Jones Article and other prior art documents to Inline, and provided a copy to defendants.  Defendants state that neither they nor Waring had any knowledge of this article prior to Verizon's invalidity disclosure to Inline.  Waring reviewed that article and concluded that it anticipated the asserted claims of the patents-in-suit, including that opinion in the Supplemental Report.

Inline emphasizes that the Supplemental Report was served six months after the deadline for filing expert reports and one week before motions *in limine* were due. Inline argues that despite the alleged difficulty in locating the references discussed in that report, "it is without dispute that defendants had many of them in their possession months before they served" the Supplemental Report.[17]  Defendants dispute that they possessed all of the documentation necessary for Waring to complete the Supplemental Report.

The documents defendants received on July 10, 2006 relate to the VDM System. Defendants have represented, however, that Waring was unable to fully detail his invalidity opinion on that system until receipt of Williams' report on October 15, 2006. Moreover, defendants' July 11, 2006 letter specified the Bates numbers of the documents upon which they based their reservation of the right to supplement Waring's invalidity opinions.  This reservation was repeated by Waring during his deposition. Inline asked Waring if the April 18 Report "is intended to set forth a complete statement

---

[17] D.I. 575 at 1 (citing Melarti's July 11, 2006 letter).

7

of all the opinions you expect to offer in this case," to which he responded, "I believe
that I've reserved the right to add or change my opinions if some of the assumptions
change."[18]  Inline again asked Waring if the April 18, 2006 report "includes a complete
statement of the basis and reasons for your opinion" to which he reiterated "[a]gain, I
think I've reserved right to perhaps amend those and augment those."[19]  Waring's
answers clearly refer to the July 11, 2006 letter which cites the VDM System
documents.  It is dubious that Inline was surprised that Waring would supplement his
invalidity opinions to include the VDM System.  Also, defendants did not receive the
Ithell & Jones Article on September 13, 2006.  Defendants served the Supplemental
Report approximately five weeks later, and mere days after receipt of  Williams' report.

      Nevertheless, Inline suggests that the facts here are reflected in this court's
denial of a defendant's request to submit a supplemental expert report in *Chase
Manhattan Mortgage Corp. v. Advanta Corp.*[20]  The *Chase* court found that the
supplemental report sought to be submitted would be highly prejudicial.  Contrary to
Inline's contention that each factor identified in that case is present here, that case is
readily distinguishable.  There, Advanta delivered its supplemental report to Chase six
months after the close of expert discovery, one month before trial was scheduled to
begin, and after the filing of the proposed final pretrial order.[21]  Here, defendants'
Supplemental Report was served three months after the close of expert discovery,
more than three and a half months before trial, and nearly three months before the

---

[18] D.I. 528, Ex. C, Waring Dep. at 28:13-18.
[19] *Id.*, Ex. C, Waring Dep. at 29:1-5.
[20] C.A. 01-507 (KAJ), 2004 WL 912949 (D. Del. Apr. 22, 2004).
[21] *Id.* at *1.

8

proposed final pretrial order.  Significantly, after listing the above factors, the *Chase* court noted, "*[m]ore to the point*, if the evidence it now sought to bring into the trial were genuinely critical, Advanta *could have* and should have made a motion to supplement months ago, but it did not."[22]  Accepting defendants' representations as to when they received the documents relied upon by Waring in the Supplemental Report, which is consistent with the time period when Inline received the same materials, Waring could not have served that report months earlier.  The court also notes that had defendants sought leave to submit the Supplemental Report, which ordinarily would have been preferred practice, that based on when they received all of the information necessary for Waring to adequately formulate the opinions expressed therein, little, if any, time would have been saved.  The parties undoubtedly would have made the same arguments in promoting and opposing the filing of that report.  In light of defendants' supplementation obligations under Fed. R. Civ. P. 26(a)(2)(B) and 26(e)(1), and the relatively prompt filing of the Supplemental Report following receipt of the documents about which Waring opines, the court determines that exclusion of that report is not warranted on the basis of the timing of its service.

In addition to the timeliness of the Supplemental Report, however, Inline contends it will be severely prejudiced in its ability to prepare for trial if the court denies its motion.  Inline argues that both the amount of material it must review as well as the amount of deposition discovery it will have to conduct to prepare a proper response for trial is prejudicial.  Inline points out that the Supplemental Report is over 30 pages long

---

[22] *Id.* at *1 (emphasis added).

9

with nearly 350 pages of declarations and technical materials attached to and cited in the report, as well as errors in citation with regard to the VDM System, would require a substantial amount of time to prepare a proper response for trial.

Defendants served the Supplemental Report on October 20, 2006 and Inline filed its motion *in limine* on October 27, 2007, over three months before trial. Inline is also reminded that the court's May 18, 2006 scheduling order contemplated that motions seeking to limit or exclude expert testimony were to be filed no later than October 16, 2006.[23] On October 10, 2006, the parties filed a stipulation to extend the filing of those motions until October 27, 2006, which the court signed the following day.[24] After filing those motions and associated opening briefs on October 27, 2006 (and after Inline was served with the Supplemental Report) the parties filed–*on the day answering briefs were due*–yet another stipulation to extend the filing of answering and reply briefs such that briefing was not completed until December 1, 2006.[25] Prudence being the better part of valor, the court is confident that Inline and its expert have been digesting the material contained in the Supplemental Report and preparing a response thereto since its receipt rather than presuming the court would automatically exclude testimony related thereto.

Inline also contends that substantial deposition discovery would need to be conducted to prepare a response to the Supplemental Report, particularly with regard to the VDM System. Inline asserts that it would need to depose five individuals whose

---

[23] D.I. 392.
[24] D.I. 505.
[25] D.I. 543.

10

declarations Waring relied upon and who purport to have intimate knowledge of the VDM System.  Those individuals' declarations are said to contain information on how the VDM system operated, its configuration, and the equipment that was used in manufacturing the system.[26]  Inline also argues it would need to depose Coherent Communications Systems Corp. ("Coherent") and AT&T, the companies who manufactured and sold the VDM System.

To the extent deposition discovery is required by Inline to properly respond about the VDM System, defendants contend that Inline would only need to depose Williams. Defendants point out that the Williams' declaration is the only one Waring relied on in the chart purportedly demonstrating invalidity.  Defendants maintain that the other declarations cited in the Supplemental Report  concerning the VDM System primarily apply to background information or authenticity of documents.  Moreover, defendants represent that they "would agree not to rely on any of the other declarations at trial to ensure that Inline need only take one fact deposition."[27]  With regard to the Ithell & Jones article, defendants argue that Inline would not be prejudiced by having its expert develop its opinion on this five page article and that no fact depositions would be needed to respond to the Ithell & Jones article.  They maintain that discovery can easily be reopened for the limited purpose of (1) having Beckmann submit a limited rebuttal report and (2) allowing depositions of Waring and Beckmann limited to the subject matter of the Supplemental Report should the parties so desire.  Inline does not argue

---

[26] See D.I. 575 at 3, 3 n.3 (identifying Arthur B. Williams, Frank Scolaro, Howard C. Lee, David Hoerl, and Jerry F. Skene as necessary deponents).
[27] D.I. 546 at 12 n.5.

11

that it would need to depose any witnesses concerning the Ithell & Jones article, but reiterates that Inline and their expert would, nevertheless be required to investigate and prepare their responses, resulting in prejudice.

Although the court believes that Inline has had sufficient time to review the new prior art references and substantially prepare a response thereto, in order to limit Inline's additional trial preparation and allow it to complete its response to the opinions recited in the Supplemental Report, the court determines the following:  (1) It will exclude reference to the declarations cited in the Supplemental Report other than that of Williams; (2)  Inline will be permitted to depose Williams and defendants shall produce Williams and will not challenge any subpoena to Williams on personal jurisdiction, or other, grounds; (3) Inline will be permitted to depose Waring on the opinions contained in the Supplemental Report; (4) Beckmann will submit a report in rebuttal to the Supplemental Report no later than 72 hours before his scheduled testimony; and (5) defendants will not be permitted to depose Beckmann on that rebuttal report.

## IV.  CONCLUSION

For the reasons stated above, Inline's motion is granted in part and denied in part.

12