## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | C. A. No. 02-272-MPT |
| AOL TIME WARNER INCORPORATED, et al., Defendants. | ) ) ) | |
| -------------------------------------------------- | ) | |
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) ) | C. A. No. 02-477-MPT |
| EARTHLINK, INC., Defendant. | ) ) ) | Consolidated Cases |

## MEMORANDUM ORDER

## I. INTRODUCTION

This is a patent infringement case.  Inline Communication Corporation ("Inline")

sued America Online Inc. ("AOL") on April 12, 2002, and EarthLink, Inc. ("EarthLink") on

June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"),

6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[1]

On August 15, 2006, Inline submitted a letter to the court requesting leave for

---

[1] Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to this litigation. The '718 patent is not at issue in this litigation.

further briefing on its motion for sanctions[2] against AOL and Earthlink ("defendants") for purported violations of discovery obligations.  On October 5, 2006, the court issued a memorandum order[3] denying Inline's request for further briefing on their motion and for sanctions.[4]  Prior to that order, on August 31, 2006, defendants filed a motion for partial summary judgment and *in limine* to preclude damages for customers provisioned through non-infringing central office ("CO") DSLAMS.[5]  In addition, on October 27, 2006, defendants filed a motion *in limine* to exclude the testimony of Inline's expert, James E. Malackowski,[6] with regard to CO provisioned customers.  In a memorandum order dated January 16, 2007, [7] the court found summary judgment inappropriate and denied the motion *in limine* as to Malackowski's testimony about CO deployment and resulting damage calculations.

In its present motion, Inline moves to exclude the testimony of defendants' experts, Julie Davis and Mark Gallagher, on damages and royalty calculations based on

---

[2] D.I. 277 Inline's Motion for Sanctions (July 18, 2004) denied in telephone conference D.I. 282 Order Denying Sanctions (July 25, 2004).

[3] *Inline Connection Corp. v. AOL Time Warner Inc.*, No. C. A. 02-272-MPT, 2006 WL 2864586 (D. Del. Oct. 5, 2006).

[4] Inline alleged that defendants failed to meet the requirements of Federal Rules of Civil Procedure ("FRCP") 26 and 34(a) by withholding information regarding remote terminal ("RT") and central office ("CO") deployment.  The court concluded that defendants did not have custody, control or possession of the information and, therefore, did not have the legal obligation to compel production of such information from the telephone companies ("telcos").  As a result, they had no obligation to produce such information during discovery, and the motion for sanctions was denied.

[5] D.I. 441 (Defendant's America Online, Inc.'s and EarthLink, Inc.'s Motion for Partial Summary Judgment and Motion *In Limine* Precluding Damages for Customers Provisioned Through Non-Infringing Central Office DSLAMS).

[6] D.I. 514 (Opening Brief in Support of Defendants' Motion *In Limine* to Exclude or Preclude the Expert Testimony of James E. Malackowski).

[7] *Inline Connection Corp. v. AOL Time Warner Inc.*, C.A. No. 02-272-MPT, 2006 WL 2864586 (D. Del. Jan. 16, 2007).

RT deployment figures. Inline's motion also asks to exclude testimony regarding prior settlement negotiations. For the reasons discussed herein, Inline's motion is granted in part and denied in part.

## II. STANDARD OF REVIEW

Inline moves to limit defendants' evidence regarding the licensing royalty base on which damages are calculated, and evidence that may influence the assessment of a hypothetical settlement negotiation. Specifically, it seeks to exclude Davis' and Gallagher's opinions and testimony with regard to RT provisioning and truck roll percentages,[8] including any information on defendants' ability to obtain that data. Inline also seeks exclusion of Davis' opinion and testimony on AOL's licensing strategies and both experts' opinions on, and evidence of settlement offers made by, or received by Inline during the course of infringement litigation. Inline argues that the experts' testimony lacks the reliability required by FRE 702 and FRE 703. It argues for further exclusion of evidence of prior settlement agreements under FRE 403 and 408.

Rule 702 provides in relevant part:

If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert,* the Supreme Court found that Rule 702 "confides to the judge

some gatekeeping responsibility in deciding questions of the admissibility of

---

[8] *See Id.* for discussion of RT and CO deployment and truck rolls as a basis for royalty calculations.

3

proffered expert testimony."[9]  This gatekeeper function of excluding unreliable

testimony has also been applied to patent litigation.[10]  *Daubert* provides a "non-

exclusive checklist"[11] for trial courts to use in their assessment of whether expert

testimony met the reliability requirements.  FRE *Advisory Committee Notes*[12] are

instructive as well.  The 2000 Amendments emphasize that no single factor is

necessarily dispositive of the reliability of an expert's testimony.  Rather, the

amendments identify a number of factors relevant to non-scientific expert

testimony on the issue of reliability.

The determination of whether to exclude expert evidence is committed to

the court's discretion.[13]  The Third Circuit has noted, however, that:

> While evidentiary rulings are generally subject to a particularly high level
> of deference because the trial court has a superior vantage point to
> assess the evidence . . . evaluating the reliability of scientific
> methodologies and data does not generally involve assessing the
> truthfulness of the expert witnesses and thus is often not significantly
> more difficult on a cold record.  Moreover, here there are factors that
> counsel in favor of a hard look at (more stringent review of) the district
> court's exercise of discretion.  For example, because the reliability
> standard of Rules 702 and 703 is somewhat amorphous, there is a
> significant risk that district judges will set the threshold too high and will in

---

[9] *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 600 (1993)

[10] See *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999).

[11] *Daubert,* 509 U.S. at 593.

[12] "The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or
theory can be or has been tested---that is, whether the expert's theory can be challenged in some
objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably
be assessed for reliability; (2) whether the technique or theory has been subject to peer review and
publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the
existence and maintenance of standards and controls; and (5) whether the technique or theory has been
generally accepted in the scientific community."  FRE 702, *Advisory Committee Notes,* 2000
Amendments.

[13] *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

4

fact force plaintiffs to prove their case twice.  Reducing this risk is
particularly important because the Federal Rules of Evidence display a
preference for admissibility.[14]

The Third Circuit found that "'the exclusion of critical evidence is an

'extreme' sanction, not normally to be imposed absent a showing of willful

deception or 'flagrant' disregard of a court order by the proponent of the

evidence,'"[15] and identified several factors for the court to consider in deciding

whether to exclude testimony:

> (1) the prejudice or surprise in fact of the party against whom the excluded
> witnesses would have testified, (2) the ability of that party to cure the
> prejudice, (3) the extent to which waiver of the rule against calling unlisted
> witnesses would disrupt the orderly and efficient trial of the case or of
> other cases in the court, and (4) bad faith or willfulness in failing to comply
> with the district court's order.[16]

The Third Circuit also noted that "'the importance of the excluded testimony'

should be considered."[17]

Nonetheless, the trial judge has broad latitude in determining whether the

Daubert factors are reasonable measures of reliability.[18]  The Third Circuit found

in In re Paoli R.R. that profferers of expert testimony do not have to

"demonstrate . . . by a preponderance of the evidence that the assessments of

their experts are correct, they [need] only . . . demonstrate by a preponderance

---

[14] Id. at 749-50.

[15] Id. at 791-92 (quoting Meyers v. Pennypack Woods Home Ownership Ass'n, 559 F.2d 894, 905
(3d Cir.1977)).

[16] Id.

[17] Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997) (quoting Meyers, 559
F.2d at 904).

[18] See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 139 (1999).

5

of evidence that their opinions are reliable."[19]  *Daubert* recognized that "vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[20]  *Daubert* emphasized that the trial court must "focus" solely on principles and methodology, and not on the conclusions generated.[21]  A trial judge, however, is to scrutinize whether such methods have been properly applied to the facts of the case.[22]  In making the decision to exclude evidence, the court must balance the need for the challenged evidence against the risk that it will confuse the jury and delay the trial.[23]

Rule 703 addresses the foundational basis of expert testimony:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

FRE 703 impacts the "disclosure of information that is reasonably relied on by an

---

[19] *In re Paoli R.R.*, 35 F.3d at 744.

[20] *Daubert*, 509 U.S. at 596.

[21] *Id.* at 580.

[22] *See Id.*

[23] *See In re Paoli R.R.,* 35 F.3d at 746.

6

expert, when that information is not admissible for substantive purposes."[24]  In balancing probative verses prejudicial, the court may consider the "opportunity for an expert to be cross-examined, and the ultimate disclosure of the weight of information reasonably relied upon."[25]  A court should not consider the strength or weakness of the basis of an expert's testimony, because "[r]ule 705, together with rule 703, places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."[26]  "When the factual underpinning of an expert's opinion is weak, it is a matter affecting the weight and credibility of the testimony-a question to be resolved by the jury."[27]  When an expert meets the foundational requirements for admissibility, "the burden shift[s] . . . [to the opposing party to] explore any deficiencies in the expert's sources."[28]  Finally, where courts found that expert opinion was not supported by *any* evidence that experts in the field used,[29] or where the factual basis of the report was contradicted in the record,[30] there was a basis for excluding expert testimony.

Inline argues that its settlement offer to Verizon and contemplation of an offer to

---

[24] FRE 703 *Advisory Notes*, 2000 Amendments.

[25] *Id.*

[26] *Stecyk v. Bell Helicopter Textron Inc.*, 295 F.3d 408, 414 (3rd Cir. 2002).

[27]  *Payton v. Abbott Labs*, 780 F.2d 147, 156 (1st Cir. 1985).

[28] *Steyck*, 295 F.3d at 414.

[29] See *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999).

[30] See *Gumbs v. International Harvester, Inc.*, 718 F.2d 88 (3rd Cir. 1983) (where a plaintiff's expert's testimony needed sufficient factual foundation before it could be submitted to the jury after directly conflicting with existing factual evidence).

EarthLink should be excluded from expert testimony because of undue prejudice, relying on FRE 403 and 408.

FRE 403 permits relevant evidence to be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ." Courts in the Third Circuit have found that the weight of unfair prejudice in a case must be substantial to fall under FRE 403. "'Although relevant, evidence may be excluded if its probative value is *substantially* outweighed by the danger of unfair prejudice.' . . . FRE 403 creates a presumption of admissibility, and the district courts may utilize the rule only rarely to cause the exclusion of evidence."[31]

FRE 408 addresses the admissibility in court of evidence of prior settlement negotiations. In provides in relevant part that:

> Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible.

FRE 408 follows a policy favoring freely-negotiated settlements, by providing a neutral environment in which parties may negotiate a settlement to litigation without prejudicing their substantive rights.[32] Introducing details of settlement negotiations into the court record has a "chilling effect on the parties' willingness to enter into settlement negotiations"[33] The restriction of Rule 408 does not apply when compromise evidence

---

[31] *Valenti v. Allstate Ins. Co.*, 243 F. Supp.2d 221, 226 (3rd Cir. 2003).

[32] *See Vardon Golf Co., Inc. v. BBMG Golf Ltd.*, 156 F.R.D. 141(N.D. Ill 1994).

[33] *Id.* at 652.

8

is offered for a purpose other than to prove the specific details of a negotiated claim.[34]
For example, evidence of fraudulent statements by a party made in order to settle
litigation would be admissible.  Rule 408, however, "expressly relates to evidence of
efforts toward 'compromising or attempting to compromise a *claim* which was disputed
as to either validity or amount.'"[35]  Evidence of agreements in general, or a policy of
making a particular type of agreement may be relevant and not prohibited by Rule 408
as long as it "does not extend to the terms of those licenses granted in settlement of
litigation."[36]

## III. DISCUSSION

### Reliability of Defendants' Expert's Reports

Inline argues that portions of Davis' and Gallagher's opinions lack factual
foundation and reliability as required by FRE 702, and should, therefore, be excluded.
It proposes that  "experts opinion must be based on 'good grounds' for his/her belief for
it to be reliable"[37] and that Davis and Gallagher "could not find any factual foundation for
many of the things about which they testify."[38]  Inline wants RT deployment data
excluded from both experts' opinions, because they only interviewed Verizon and
Covad employees, failed to ask substantiating questions, and did not obtain business

---

[34] *See Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000). (Evidence of settlement offer by insurer was properly admitted to prove insurer's bad faith).

[35] *Deere & Co. v. International Harvester Co.*, 710 F.2d 1551, 1556 (Fed Cir. 1983).

[36] *Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 898 F.Supp.1334, 1342 (N.D. Iowa 1995).

[37] D.I. 522 at 13.

[38] D.I. 522 at 14.

9

records supporting the orally acquired data.[39]  Similarly, it suggests that RT data from BellSouth is not admissible because it was supplied by AOL's counsel, and does not appear to be prepared in the ordinary course of business.  With regard to AOL's practice of entering into lump-sum licenses and its experience regarding second truck rolls to customers, Inline argues that Davis failed to conduct any independent investigation to verify the percentages provided by an AOL employee.  Finally, Inline claims that the data is unreliable, because the sources used to gather the information were not named and made available as fact witnesses during discovery.

Defendants argue that verbal information obtained from the telcos is reliable, because it is the type of data reasonably relied upon by damage experts and accountants.  They further claim that their experts did not have a duty to independently investigate and verify the data reported to them.  Defendants argue that they were not obligated to provide access to RT deployment data, because they were not in legal control of that data.[40]  They contend that Inline had the opportunity to depose AOL employees about truck rolls and subpoena the telcos for RT information during discovery, but failed to do so.  Finally, they argue that issues of reliability should be addressed at trial.

The factual evidence and opinions in question are highly probative to the calculation of a reasonable royalty rate.[41]  The court, in adherence to the standards of

---

[39] *Id.*

[40] *See Inline Connection Corp. v. AOL Time Warner Inc.*, No. C.A. 02-272-MPT, 2006 WL 2864586 (D. Del. Oct. 5, 2006).

[41] While the court considered all of the arguments presented by the parties, only the arguments pertinent to the motion *in limine* presented are discussed herein.

Third Circuit, will only exclude critical evidence as an "extreme sanction." There is no evidence of willful deception or flagrant disregard of a court order. It is uncontested that the experts are qualified with regard to their skill, experience and training. Their reports contain sufficient data to support their conclusions, and their methods for estimating a royalty base are sound. Inline's suggestion that there is no factual foundation for defendants' expert's opinions is misplaced. The defense experts gathered data on RT deployment from five separate sources, covering a five year period, included data on the total number of DSL registrations for each provider and used such information in their calculations for a royalty rate. Inline's contention that the data lacks "intellectual vigor" because of the experts' inability to provide a larger sample goes to weight, and not reliability. Inline claims that the defendants' data lacks reliability because it never had an opportunity to depose the witnesses who provided the data. As addressed during the numerous discovery disputes that transpired in this matter, Inline was provided the opportunity to depose AOL and EarthLink employees and acquire the information that it needed to prepare for trial. Further, the court's prior opinion[42] on Inline's motion for sanctions addresses the discovery issues involving access to RT deployment data raised by Inline in the present motion.

As evidenced from their reports, defendants' experts compiled the appropriate data and used standard methods for calculating a reasonable royalty rate. They did not base their conclusions solely on unverifiable sources or merely on conjecture. Their techniques and theories are clearly explained and documented in their reports. Their

---

[42] *See Inline Connection Corp. v. AOL Time Warner Inc.*, No. C.A. 02-272-MPT, 2006 WL 2864586 (D. Del. Oct. 5, 2006).

11

analyses, sources and conclusions can be tested through cross-examination.

Therefore, Inline's motion to exclude based on FRE 702 is denied.

**Inclusion of Non-Admissible Data in Defendants' Experts' Reports**

Inline argues that, pursuant to FRE 703, defendants' experts should not be permitted to testify regarding "post-discovery hearsay,"[43] because such data would not be the type reasonably relied upon by experts in their field. Inline claims that the information the experts obtained through interviews with defendant's employees and third parties is itself hearsay and inadmissable and that allowing this evidence to come in would cause "profound prejudice"[44] by denying it effective cross-examination. Since defendants never identified the individuals who provided the information at issue, Inline contends that their experts' hearsay testimony involves new topics and should not be permitted under Rule 26(a).[45]

Defendants argue that their experts followed professional standards for litigation services for accountant or economic experts in obtaining their data. They contend that their experts' reliance on such information is entirely appropriate because the American Institute of Certified Public Accountants approves personal interviews for such purposes. Since their experts use techniques reasonably relied upon by others in their industry, defendants claim that there is no basis for exclusion under FRE 703. Defendants counter that Inline's expert acquired data from an Inline employee in similar

---

[43] D.I. 522 at 19. (Inline defines all potentially inadmissible facts or data used by an expert in his opinion as hearsay).

[44] D.I. 522 at 21.

[45] D.I. 522 at 20.

12

manner as Davis procured data from an AOL employee. Defendants also contend that Inline proffered no support for its argument that new information was introduced or that Rule 26(a) was violated and that argument was addressed in the court's prior opinion denying Inline's motion for sanctions.[46]

FRE 703 allows experts to use evidence that would not usually be admissible, such as, hearsay, as long as it is reasonably applied or relied upon by experts in the field for their conclusions. Rule 703 focuses on the data underlying the opinion and permits experts to use facts, information or data, if they are of a type reasonably relied upon by experts in the particular field in forming opinions."[47] Davis and Gallagher gathered data and generated their reports using methodologies consistent with the *Litigation Services and Applicable Professional Standards* of the AICPA – that is, they obtained information of a type and in a manner acceptable under the AICPA standards in forming opinions. Under the AICPA standards, experts may base opinion testimony on either facts or assumptions," including assumptions provided by the client."[48]

> The data gathering process may include a review of relevant documents, research analysis, and interviews. The nature and extent of the data will vary with each engagement and may include the practitioner's computations and analysis and other information-supporting conclusions. Experts can base opinion testimony on either facts or assumptions. Experts may base assumptions on facts, presumptions from facts, or assumptions provided by the client, other experts, or counsel. The quantity, type, and content of documentation are determined by several

---

[46] *Inline Connection Corp. v. AOL Time Warner Inc.*, C. A. No. 02-272-MPT, 2006 WL 2864586 (D. Del. Oct. 5, 2006).

[47] *In re TMI Litigation*, 193 F.3d 613, 664 (Fed. Cir. 1999).

[48] Litigation Services and Applicable Professional Standards, AICPA Special Report 03-1, 2003 New York, NY.

13

factors, including the practitioner's professional judgment, the nature of
the engagement and the directives of counsel.

Their opinions do not exclusively rely on data from a single source nor are they
in clear contradiction to the factual evidence. Even if the information upon which the
experts rely is inadmissible, their opinions and inferences are admissible. Moreover,
under FRE 703, the probative value of the underlying facts is balanced against the
prejudicial effect. In considering the prejudicial effect, the court evaluates the
information's probative value in assisting the jury to weigh the expert's opinion against
the risk of prejudice from the jury's potential misuse of the information for *substantive*
purposes.[49] Although Inline claims that it would be "profoundly prejudiced," no
argument has been presented as to how the jury would misuse the information for
substantive purposes."[50] Further, the burden generally is on counsel "through cross-
examination to explore and expose any weaknesses in the underpinnings of the
expert's opinion."[51] Both Davis and Gallagher will be subject to cross examination.

Defendants' experts followed professional standards to obtain the information
relied upon in their opinions, which shows that the type of information and manner in
which it was acquired is reasonably relied upon by experts within their field. Moreover,
the probative value of the information Inline seeks to exclude substantially outweighs its

---

[49] FRE 703, *Advisory Committee Notes*, 2000 Amendments.

[50] Although Inline argues that it was denied the opportunity to confirm the accuracy of the
underlying data upon which defendants' experts rely, which affects their ability to cross-examine those
experts, this discovery argument, in part, was addressed in the court's opinion denying Inline's motion for
sanctions, as well as, in the various discovery teleconferences that occurred throughout this litigation.

[51] *Int'l Adhesive Coating Co v. Bolton Emerson Int'l, Inc.,* 851 F.2d 540, 544 (1st Cir. 1988).

prejudicial effect.[52] As a result, Inline's motion to exclude based on FRE 703 is denied.

## Exclusion of Settlement Offers Made During Pending Litigation

Inline moves for the exclusion of its prior settlement offer to Verizon and contemplation of an offer to Earthlink. Specifically, it requests that an email (the Goodman memo) between Goodman, Inline's then President and CEO, and counsel be excluded. Inline argues that offers to license are properly excluded when those offers were made after the infringement begins and when litigation is probable.[53] It contends that such information is highly prejudicial because it could mislead the jury about the importance of prior offers and their relationship to the present matter. It argues that the information is highly speculative and offers no probative value because it is based on erroneous conclusions. Inline argues that Gallagher's discussion of the $500,000 settlement figure in the Goodman memo is particularly prejudicial since the memo is merely a preliminary discussion of settlement strategy and never an offer proposed to EarthLink. It further contends that Gallagher's interpretation of the Goodman memo is inaccurate, since it does not indicate a willingness to settle with EarthLink for a single, up front payment of $500,000.

Defendants argue that the Goodman memo and the Verizon offer are evidence of Inline's willingness to accept a one-time lump sum payment to license the patents-in-suit and, therefore, should not be excluded. They contend that should the jury find infringement, it needs to decide whether a lump sum amount or a running royalty is

---

[52] *Valenti v. Allstate Ins. Co.,* 243 F.Supp. 2d 221, 226 (3rd Cir. 2003).

[53] *Citing Hanson v. Alpine Valley Ski Area, Inc.,* 718 F.2d 1075, 1078-79 (Fed. Cir 1983).

appropriate. They further argue that such evidence provides a "reality check on the damages numbers and demonstrates that the defendants' damage numbers more reasonably reflect the sum that the plaintiff would have been able to accept . . . ."[54] Defendants contend that the Goodman memo is not an offer to settle, but rather, a promise to make such an offer, and does not fall within the scope of FRE 408. Regarding Inline's settlement offer to Verizon, they argue that FRE 408 is not an absolute restriction in patent litigation,[55] and a settlement offer is probative and not unfairly prejudicial under FRE 403, particularly since "any 'unfair prejudice' or confusion contemplated by Rule 403 would work against defendants in this case rather than plaintiffs."[56]

Evidence of prior settlement negotiations in a pending patent infringement matter is generally forbidden under FRE 408. Public policy considerations favor freely-negotiated settlements without prejudice to a party's substantive rights.[57] While general information about the existence of prior agreements or negotiations may be allowed under FRE 408, the specific terms of such agreements or proposals are not.[58] Despite defendants' spin, the Goodman memo is evidence of an offer to furnish valuable consideration in an attempt to compromise a disputed claim, and therefore, is not admissible. Moreover, defendants' argument for admission as providing a "reality

[54] D.I. 550 at 22.

[55] Citing Century Wrecker Corp. v. E.R. Buske Mfg. Co., 898 F.Supp.1334, 1339 (N.D. Iowa 1995).

[56] D.I. 550 at 24.

[57] See Vardon Golf Co., Inc. v. BBMG Golf Ltd., 156 F.R.D. 141(N.D. Ill. 1994).

[58] See Century Wrecker Corp., 898 F.Supp. at 1342.

16

check" is directly contrary to FRE 408 which bars evidence when it is offered to prove
the validity, invalidity or *amount* of a disputed claim. Defendant reliance on waiver of
attorney-client privilege or attorney work product by Inline is misplaced.[59] Whether
either privilege has been waived does not automatically or solely determine
admissibility.

Inline's negotiations Verizon fall within the confines of FRE 408. In arguing to
include such evidence, defendants merely cite to *Century Wrecker* as an example of a
case where FRE 408 is "not absolute." In that case, the plaintiff's expert specifically
relied upon the settlement agreements that the plaintiff wanted to exclude. The court
concluded that by making the terms of the agreements relevant, plaintiff could not
subsequently argue to exclude under FRE 408.[60]

In the present matter, Inline's expert did not incorporate data from prior
negotiations into his analysis, nor is Inline pro-actively making prior settlement
agreements relevant to establishing a reasonable royalty. Further, evidence of the
Verizon negotiations is not being propounded by the defendants for some purpose
other than its effect to validate their assessment of the amount in dispute.

For the reasons noted herein, Inline's motion *in limine* to exclude testimony or
opinions on settlement offers contemplated or made by Inline to Verizon or EarthLink is
granted.

January 23, 2007

United States Magistrate Judge

---

[59] D.I. 550 at 23, fn.11.

[60] *Century Wrecker Corp.*, 898 F.Supp. at 1342.

17