## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC,<br>　　　Plaintiffs,<br><br>　　　v.<br><br>AOL TIME WARNER INCORPORATED, et al.,<br>　　　Defendants. | C. A. No. 02-272-MPT |
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC,<br>　　　Plaintiffs,<br><br>　　　v.<br><br>EARTHLINK, INC.,<br>　　　Defendant. | C. A. No. 02-477-MPT<br><br>Consolidated Cases |

## **MEMORANDUM ORDER**

### I. INTRODUCTION

This is a patent infringement case. Inline Communication Corporation[1] ("Inline") sued America Online Inc. ("AOL") on April 12, 2002, and EarthLink, Inc. ("EarthLink") on June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"), 6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[2]

---

[1] Inline initially sued AOL and Earthlink. Since the original filing of the complaints, other plaintiffs have been added because of their contractual relationships with Inline. For ease of reference, all plaintiffs shall be referred to as Inline.

[2] Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to the litigation after it was issued in 2003. The '718 patent is no longer at issue in the litigation.

Inline filed two separate motions[3] requesting that the court preclude defendants' invalidity expert, David L. Waring, from offering certain testimony at trial. Inline's motion under consideration is directed at Waring's April 18, 2006 Expert Report (the "April 18 Report") reciting his opinions of lack of enablement and obviousness.[4] Inline contends that the opinions recited therein are the product of improper standards and unreliable methods. For the reasons discussed, Inline's motion will be granted in part and denied in part.

## II. POSITIONS OF THE PARTIES

Plaintiffs contend that Waring's opinions on enablement and obviousness are unreliable and, therefore, will not assist the trier of fact and should be excluded under Federal Rule of Evidence 702.

Inline first argues that the enablement analysis recited in the April 18 Report is unreliable because it concerns only whether the patents enable *the accused infringing system*, not whether they enable the claimed invention as required under a proper enablement analysis. Inline concludes, therefore, that Waring's use of the purportedly incorrect legal standard renders his enablement testimony unreliable. Inline also argues that Waring ignored several secondary considerations in forming his obviousness opinions and, as a result, his opinion on obviousness is unreliable.

Defendants contend that Inline misstates the law of enablement and obviousness and should be denied. Defendants argue that the crux of Inline's

---

[3] Inline's second motion is directed at Waring's October 20, 2006 Supplemental Expert Report (the "Supplemental Report"), which plaintiffs argue should be excluded as untimely. The Supplemental Report was the subject of the court's January 8, 2007 memorandum opinion, D.I. 593.

[4] D.I. 524 (Motion to Exclude Certain Testimony Waring's Expert Report).

argument on enablement is that Waring did not consider enablement of the claimed invention, but rather considered enablement of the accused product (ADSL) and, therefore, applied the wrong law, thereby rendering his methodology fatally flawed. Defendants maintain that Inline's argument is largely one of semantics and without merit. Accordingly to defendants, in determining what the "full scope" of the claims is, Waring merely assumed Inline's contention that ADSL falls within the scope of the claims. Defendants analyze that since ADSL is an end-to-end digital transmission system spanning potentially thousands of feet of telephone lines using frequencies up to 1 MHZ and if Inline is correct that a system utilizing the public telephone network over a distance of several miles is within the scope of the claims, then it necessarily follows that such a system must be enabled by the specification of the patents-in-suit.

Defendants also state that Inline ignores the Federal Circuit's requirement that the patent specification must enable the full scope of the claims, and has expressly endorsed defendants' enablement analysis in *Plant Genetic Sys. v. DeKalb Genetics Corp.*[5] Defendants emphasize the Federal Circuit's comment that "PSG [the patent holder] concedes that the cell claims cover monocot cells. Only by doing so can PSG sue DeKalb, which makes monocot products, for infringement." Defendants note because the patent at issue in *Plant Genetic* did not enable monocot cells – *i.e.*, the element accused of infringing the claims – the Federal Circuit held that the patent was not enabled. Consistent with *Plant Genetic*, defendants contend that Waring evaluated the common specification and determined that it does not teach how to transmit digital

---

[5] 315 F.3d 1335, 1431 (Fed. Cir. 2003).

3

signals over several miles over the public telephone network and thus, the specification does not enable the broad patent claims asserted here, rendering them invalid.

With regard to Waring's opinion on obviousness, defendants maintain that Inline misapprehends the role of secondary considerations of non-obviousness in the analysis of whether a patent claim is invalid under 35 U.S.C. § 103. They contend that Inline asserts, without support, that experts in patent cases are *required* to provide detailed analysis of every single factor ever identified by the Federal Circuit as potentially pertinent to the obviousness inquiry.[6] Since secondary considerations are a means for a *patentee* to rebut a prima facie showing of obviousness, defendants argue that they do not bear the burden of showing the absence of such factors, and Waring had no obligation to analyze any secondary considerations of non-obviousness in setting forth his prima facie case of invalidity. Defendants maintain that Waring actually gave more thought to secondary considerations than Inline's own validity expert, (including the failure of others to solve the problem addressed by the patents and long-felt need to do so), and concluded that they cannot overcome defendants' prima facie showing of obviousness. Defendants conclude that Waring's expert opinions on enablement and obviousness are, thus, firmly grounded on correct legal standards and Inline's motion should be denied.

Inline responds that defendants concede that Waring did not evaluate whether the patent enabled the claimed invention and that Waring's opinion was limited to

---

[6] *See DyStar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed Cir. 2006) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1996)) (determination of obviousness depends upon, among other things *relevant* secondary considerations, including commercial success, long felt but unsolved needs, and failure of others).

4

whether the patent enabled the accused system. Inline contends that, according to defendants' logic, if the accused system infringes the patents-in-suit, then the accused system must define the full scope of the claimed system, and therefore the specification must enable the accused system. According to Inline, the flaw in this logic is that the accused system–infringing or not–does *not* define the full scope *of the claimed system*. Rather, the full scope of the claimed system is defined *by the claim terms* as construed by the courts. Thus, a proper enablement analysis consists of comparing the claims as construed to the specification to see if they are enabled, but Waring did not do this.

Regarding obviousness, Inline argues that there is no case law which allows an expert to ignore secondary considerations. Inline contends that the Federal Circuit has clearly stated that "evidence of secondary considerations may often be *the most probative and cogent evidence* in the record. It may often establish that an invention appearing to have been obvious in light of the prior art was not."[7]

Inline also cites the requirement of Rule 702 that expert opinions be the product of reliable principles and methods that have been applied reliably to the facts of the case. Inline concludes in light of the importance that the Federal Circuit places on secondary considerations, they constitute well-known principles that other experts would consider when rendering an invalidity opinion, and thus, the failure of Waring to consider such principles or use methods typically considered or used by other experts (that is, by ignoring evidence of secondary considerations that Inline claims to exist) renders his opinion unreliable.[8]

---

[7] *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983 ) (emphasis added).
[8] *See, e.g., In re TMI Litigation*, 193 F.3d 613, 669 (3d Cir. 1993).

Inline also relies on Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(B). Inline claims that Waring's report fails to meet this rule because as an expert, Waring must set forth "a complete statement of all opinions to be expressed and the basis therefore," including "data or other information considered by the witness in forming the opinions. . . ." Because Waring does not address all secondary considerations, Inline argues that Waring's analysis is incomplete and thus, unreliable.

### III. DISCUSSION

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to "contain a complete statement of all opinions to be expressed and the basis and reasons therefore." Rule 26(a)(2)(C) also states that "[t]he parties shall supplement these disclosures when required under subdivision (e)(1)." Rule 26(e)(1) provides that "a party is under a duty to supplement. . . its disclosures under subdivision (a)" when the information previously disclosed is incomplete or incorrect and the additional or corrective information has not been provided to the other parties during the discovery process. Further, in the case of an expert who is required to provide a report pursuant to 26(a)(2)(B), the obligation to supplement extends to the information contained in the report and through deposition of the expert.

The determination of whether to exclude evidence is committed to the court's discretion. The Third Circuit has noted, however, that:

> While evidentiary ruling are generally subject to a particularly high level of deference because the trial court has a superior vantage point to assess the evidence . . ., evaluating the reliability of scientific methodologies and data does not generally involve assessing the truthfulness of the expert witnesses and thus is often not significantly more difficult on a cold record. Moreover, here there are factors that counsel in favor of a hard look at (more stringent review of) the district court's exercise of discretion. For

6

example, because the reliability standards of Rules 702 and 703 is somewhat amorphous, there is a significant risk that district judges will set the threshold too high and will in fact force plaintiffs to prove their case twice. Reducing this risk is particularly important because the Federal Rules of Evidence display a preference for admissibility.

The Third Circuit also noted that "'the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence,'"[9] and identified several factors for the court to consider in deciding whether to exclude testimony:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.[10]

The Third Circuit clearly emphasized that "'the importance of the excluded testimony' should be considered."[11]

None of the cases cited by defendants hold that the patent must enable the accused product, nor that the accused product is what defines the full scope of the invention and defendants' reliance on *Plant Genetic* for this proposition is misplaced. The patent in that case taught a genetically engineered plant cell that could prevent herbicides from blocking the function of glutamine synthetase. The parties had *stipulated* for construction purposes that the scope of certain claims was construed to cover all plant cells, both "monocot" plants and "dicot" plants. Thus "whether the cell

---

[9] *Paoli*, 35 F.3d at 791-92 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir.1977)).
[10] *Paoli*, 35 F.3d at 791.
[11] *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d cir. 1977)).

7

claims of the '236 patent, which are *agreed by the parties* literally to cover all plant cells [monocots and dicots], were enabled for monocots on March 11, 1987" was the issue.[12] In other words, the district court looked at the claim terms as construed and evaluated whether the specification enabled it – just as the law requires.[13] That the claim had to read onto monocots in order to sustain the plaintiff's infringement claim was an interesting side story, but, contrary to defendants' assertion, did not factor into the court's enablement decision.[14] Thus, *Plant Genetic* actually undermines defendants' argument.

By requiring that the patent enable an end-to-end ADSL system, defendants ignore the rule that the specification "need not enable anything broader than the scope of the claims."[15] This protects patentees from having someone avoid infringement merely by adding one additional element to an otherwise infringing product.[16] This distinction is particularly important in the present matter because the accused system contains features that are not part of the claimed system, but which Waring contends must be enabled by the specification. For example, according to Waring, "ADSL is designed to operate over distances of up to approximately three miles [approx. 18,000 feet] and do so without any additional amplification mid-way along the transmission path." He concludes that 1,000 feet is the farthest distance discussed in the patent specifications, and therefore, the patents do not enable one of ordinary skill in the art to make an ADSL system which operates distances of 18,000 feet. Inline's expert,

---

[12] *Plant Genetic*, 315 F.3d at 1338.
[13] *Id.* at 1338, 1341.
[14] *Id.*
[15] See *Neutrino Dev. Corp. v. Sonosite, Inc.*, 410 F. Supp. 2d 529, 542 (S.D. Tex. 2006).
[16] See *N. Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931 (Fed. Cir. 1990).

Jackson explains that the patents need not enable a distance of 18,000 feet let alone an entire ADSL system: "the patents do not teach television or ADSL or Ethernet. Rather, they teach a system that allows one to transmit television or ADSL or Ethernet or yet-uninvented signals on telephone wiring without interference to the telephone service on that wiring. . . . But, someone provisioning ADSL can elect to use the invention of the patents in suit in order to gain the efficiencies that the invention delivers."

Thus, while defendants' ADSL service allegedly uses the claimed system to infringe, that does not mean that the patent specification must enable the ADSL service as opposed to merely the claimed system.[17]

At no time did Waring evaluate whether the patents would enable one of skill in the art to make or use *the claimed invention* without undue experimentation. Indeed, Waring contends–incorrectly–that the claimed invention involves only the transmission of analog video signals over existing telephone wiring. Yet, he never evaluated whether the patents would have enabled one to practice *that* invention. Because Waring did not conduct a proper enablement analysis, his opinion is not reliable and is not admissible on enablement.[18] As a result, Waring's opinion and testimony regarding enablement is excluded.

Inline's argument, however, on obviousness is completely contrary to clear Federal Circuit law stating that secondary considerations are a means for a *patentee*

---

[17] See *SuperGuide Crop. v. DirecTV Enters., Inc.*, 358 F.3d 870, 880 (Fed. Cir. 2004) (to satisfy enablement, the specification need not describe every conceivable embodiment, and the claimed invention need not be perfect in operation).

[18] See *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994).

9

(*i.e.*, Inline) to *rebut* a prima facie showing of obviousness by a defendant.[19] Further, the case law cited by Inline does not examine the issue of secondary considerations with regard to expert opinions on obviousness. Rather, the case law cited by Inline shows that the trial court as the *fact finder* is obligated to consider evidence of nonobviousness when reaching its conclusion on obviousness.[20] A defendant does not bear the burden of showing the absence of such factors. Moreover, as evidenced by the cases cited by the defendants, those factors need not be considered at all if they are not relevant. Inline's assertion that the Federal Circuit has identified 10 factors that an expert must consider is misplaced. Whether Waring adequately addressed or failed to address relevant secondary considerations goes to weight, not reliability under FRE 702.

Inline's argument regarding the application of FRCP 26(a)(2)(B) as an element of an expert's qualification misinterprets and misapplies the rule. As noted in the *Advisory Committee Notes*,[21] the goal of the 1993 changes was to have the expert reports set forth the "substance of *direct* examination," written so that the reports "reflect the

---

[19] See *Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1293 (Fed. Cir. 2006) (secondary considerations are available for *a patentee* to use in rebutting a *prima facie* case of obviousness.; *Syntex (U.S.A.) LLC v. Apotex, Inc.*, 407 F.3d 1371, 1383 (Fed. Cir. 2005) ("[T]he secondary consideration[s] . . . exist[] largely to provide *a means for patentees* to show in close cases that subject matter that appears obvious is in law unobvious . . . .") (emphasis added).

[20] See *Ruiz v. AB Chance Co.*, 234 F.3d 654, 667 (Fed. Cir. 2000) (holding that the district court erred in failing to consider or discuss evidence of secondary considerations; citing precedent that where secondary considerations are present, they must be considered); *Ashland Oil Inc. v. Delta Resins and Refractories Inc*, 776 F. 2d 281, 306 (Fed. Cir. 1985) (finding that it was legal error for a district court to fail to consider relevant evidence of secondary considerations); *cf. Brown & Williamson v. Philip Morris*, 229 F.3d 1120, 1131 (Fed. Cir. 2000) (where the failure of the district court to cite to secondary considerations alone is not reversible error; thus, although the court did not consider certain objective evidence of nonobviousness, such error was harmless because the patentee could not overcome strong evidence of nonobviousness); *Simmons Fastener Corp. v. Illinois Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed. Cir. 1984) ("Trial court's error lies in its exclusion of such evidence in arriving at a conclusion on the obviousness of the claimed invention.").

[21] FRCP 26(a)(2)(B) *Advisory Committee Notes*, 1993.

testimony to be given by the witness." Nothing in Rule 26 suggests that expert testimony be excluded based on the reliability of the conclusions of the expert.

As a result, Inline's motion to exclude Waring's opinion of obviousness is denied. Inline's motion to exclude Waring's opinion of enablement is granted.

January 29, 2007

_____
UNITED STATES MAGISTRATE JUDGE