IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) | C. A. No. 02-272-MPT |
| AOL TIME WARNER INCORPORATED, et al., Defendants. | ) ) ) ) | |
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, Plaintiffs, | ) ) ) ) ) ) | |
| v. | ) | C. A. No. 02-477-MPT |
| EARTHLINK, INC., Defendant. | ) ) ) | Consolidated Cases |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

This is a patent infringement case. Inline Communication Corporation[1] ("Inline")

sued America Online Inc. ("AOL") on April 12, 2002, and EarthLink, Inc. ("EarthLink") on

June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"),

---

[1] Inline initially sued AOL and Earthlink. Since the original filing of the complaints, other plaintiffs have been added because of their contractual relationships with Inline. For ease of reference, all plaintiffs shall be referred to as Inline.

6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[2]  Inline alleges

defendants' Digital Subscriber Line products infringe claim 61 of the '596 patent, claims

1-6 of the 446 patent, and claims 1, 2, 4, 8 and 9 of the '585 patent.

In January 2004, the court issued an opinion construing claim terms the parties

agreed were in dispute.[3]  In October 2004, the court modified its construction of one of

the claim terms in response to Inline's motion to reconsider.[4]  On April 13, 2005, the

court granted in part and denied in part defendants' motion for summary judgment of

non-infringement and denied Inline's motion for summary judgment of infringement.[5]

On October 18, 2005, the court denied defendants' motions for clarification and

reconsideration of its April 13, 2005 order.[6]

Currently pending are additional claim terms the parties have identified as in

dispute.  This opinion sets forth the court's construction of those additional claim terms.

## II. DISCUSSION

The parties have identified terms in independent claim 61 of the '596 patent,

claims 1 and 8 of the '585 patent, and claims 1, 2, and 3 of the '446 patent for the court

---

[2] Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to the litigation after it was issued in 2003. The '718 patent is no longer at issue in the litigation.

The '596, '446, and '585 patents are each continuations of a patent application filed July 14, 1989. The July 14, 1989 application issued as U.S. Patent No. 5,010,399 ("the '399 patent"), which is not asserted in this action. More specifically, the '585 patent is a continuation of the application that resulted in the '446 patent, which is a continuation of the application that resulted in the '596 patent. Throughout this opinion, the three patents may be referred to as the '596 line of patents as they each share a substantially identical written disclosure.

Because the '596 line of patents each share a substantially identical written disclosure, citation to the '596 patent's written description (the "common specification") in this opinion should be understood to refer to the same language in the written descriptions of the '446 patent and the '585 patent.

[3] *Inline Connection Corp. v. AOL Time Warner Inc.*, 302 F. Supp. 2d 307 (D. Del. 2004) (the "2004 *Markman* Opinion"). Description of the inventions of the patents-in-suit are recited in the court's prior opinions, familiarity with which is assumed by the reader.

[4] *Inline Connection Corp. v. AOL Time Warner Inc.*, 347 F. Supp. 2d 56 (D. Del. 2004).

[5] *Inline Connection Corp. v. AOL Time Warner Inc.*, 364 F. Supp. 2d 417 (D. Del. 2005).

[6] *Inline Connection Corp. v. AOL Time Warner Inc.*, 395 F. Supp. 2d 115 (D. Del. 2005).

to construe. The parties also dispute whether the preambles of each of those claims is

a substantive limitation on the claims. Those claims are as follows, with the disputed

terms in italics.

'596 Claim 61:

A system for communicating information between an external source of information and a plurality of destinations of information over *a telephone wiring network used for passing telephone signals in a telephone voice band between a plurality of telephone devices and a telephone exchange*, comprising:

a plurality of transceivers coupled between *the telephone wiring network* and corresponding destinations of information, each including

circuitry for accepting signals in a high frequency band of frequencies above the highest frequency of *the telephone voice band* and rejecting signals in the telephone voice band; and

a signal interface coupled between the external source of information and *the telephone wiring network*, including

circuitry for receiving a plurality of external signals encoding a plurality of information streams from the external source of information, and

*circuitry for transmitting to selected sets* of one or more of the plurality of transceivers a corresponding plurality of internal signals in the high frequency band each encoding one of the plurality of information streams over *the telephone wiring network*;

wherein *the telephone wiring network* includes a *branch network* which couples one of the plurality of telephone devices to the telephone exchange telephone exchange [sic], and the *branch network* includes circuitry for preventing transmission of signals in the high frequency band to the one of the telephone devices on the branch network.

'446 Claim 1:

A system for communicating information between an external source of information and destinations of information *over a telephone wiring network used for passing telephone signals in a telephone voice band between a plurality of telephone devices and a telephone exchange*, comprising:

a transceivers [sic] coupled between a conductive path of *the telephone wiring*

3

*network* and a first destinations of information, including circuitry coupled to said conductive path for accepting signals in a high frequency band of frequencies above the highest frequency of the *telephone voice band* and rejecting *signals in the telephone voice band*;

a plurality of filters, each coupled between said conductive path and a corresponding one of the plurality of telephone devices, for preventing transmission of signals in the high frequency band to the telephone devices; and

a signal interface coupled between the external source of information and said conductive path, including

circuitry for receiving an external signal encoding an information stream from the external source of information,

circuitry for transmitting over *the telephone wiring network* to the transceiver an internal signal in the high frequency band encoding the information stream, and

circuitry for limiting transmission of the internal signal in the high frequency band from *the telephone wiring network* to the telephone exchange and for passing signals in the telephone frequency band between *the telephone wiring network* and the telephone exchange;

wherein each of the plurality of filters is coupled to said conductive path at a location separated from the transceiver and from the signal interface.

'446 Claim 2:

The system of claim 1 wherein the *telephone wiring network* includes a plurality of separate conductive paths that includes the first conductive path, each of the plurality of separate conductive paths being couple to the signal interface.

'446 Claim 3:

The system of claim 2 further comprising additional transceivers, each coupled between a different one of the separate conductive paths and a different one of a plurality of destinations of information, wherein the signal interface further includes circuitry for transmitting over the *telephone wiring network* to each of the additional transceiver an internal signal in the high frequency band.

'585 Claim 1:

A system for communicating information between an external source of information and destinations of information each at a different one of a plurality of residences over *a*

4

*telephone wiring network used for passing telephone signals in a telephone voice band between telephone devices at the residences and a telephone exchange*, comprising:

a plurality of transceivers, each located at a different one of the residences and coupled to a destination of information at said residence;

a signal interface located on *the telephone wiring network* between the telephone exchange and each of the residences;

a plurality of separate conductive paths, each coupling the signal interface and a different one of the plurality of transceivers and providing at least part of a path for *telephone signals in the voice band* between the telephone exchange and one or more of the telephone devices at the same residence as said transceiver, wherein each of said separate conductive paths exceeds 1000 feet in length;

at each of the residences at which one of the transceivers is located, a branch conductive path coupled at a location separated from said transceiver to the separate conductive path from the signal interface to said transceiver, said branch conductive path providing at least part of the path for *telephone signals in the voice band* between the telephone exchange and a telephone device at said residence; and

for each branch conductive path, a filter coupled between the branch conductive path and the corresponding telephone device;

wherein each *transceiver* includes *circuitry for communicating with the signal interface in a high frequency band* of frequencies above the highest frequency of *the telephone voice band* over the separate conductive path coupling said transceiver with the signal interface;

each of the filters that is coupled to a branch conductive path is configured for preventing signals in the high band of frequencies from passing to the telephone device coupled to said branch conductive path; and

the signal interface includes circuitry for receiving a plurality of external signals encoding information streams from the external source of information, circuitry for transmitting over the *telephone wiring network* to the transceivers a plurality of internal signals in the high frequency band encoding the information streams, and *circuitry* for limiting transmission of signals in the high frequency band from *the telephone wiring network* to the telephone exchange and *for passing signals in the telephone frequency band between the telephone wiring network and the telephone exchange*.

'585 Claim 8:

The system of claim 1 wherein the signal interface includes *circuitry for selecting* a subset of zero or more transceivers for receipt of each of the information streams accepted from the external source of information.

## A.    Preamble Limitation

The first issue that the court must address is the parties' disagreement as to whether the preambles for the independent claims at issue are limiting. A court's determination of whether a preamble serves as a limitation upon a claim is "resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."[7] Generally, a preamble is not limiting if it "offers no distinct definition of any of the claimed invention's limitations, but rather merely states, . . . the purpose or intended use of the invention."[8] A preamble may be limiting, however, "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim."[9] For instance, "[w]hen limitations in the body of the claim rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention."[10] A preamble may be also limiting when there is "clear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art."[11] That reliance "transforms the preamble into a claim limitation because such reliance

---

[7] *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989).

[8] *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).

[9] *Catalina Marketing Int'l , Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002) (quoting *Pitney Bowes, Inc.*, 182 F.3d at 1305).

[10] *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1306 (Fed. Cir. 2005) (quoting *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003)); *see also C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1350 (Fed. Cir.1998) ("[A] preamble usually does not limit the scope of the claim unless the preamble provides antecedents for ensuing claim terms and limits the claim accordingly.").

[11] *Catalina Marketing Int'l*, 289 F.3d at 808 (citing *Bristol-Myers Squibb Co. v. Ben Venue Labs, Inc.*, 246 F.3d 1368, 1375 (Fed. Cir. 2001)).

indicates use of the preamble to define, in part, the claimed invention."[12]

Defendants argue that the preambles are limiting.  They contend that the preambles provide the antecedent basis for, and provide the structure and characteristics of, the "telephone wiring network" claim limitation that appears in the bodies of the claims.  Defendants also point to additional claim terms introduced in the preamble which provide antecedent basis for those terms in the bodies of the claims.  Defendants further contend that the preamble was relied upon during prosecution to distinguish prior art and, for that reason as well, the preambles are substantive limitations.

Inline argues that the asserted claims recite a structurally complete invention, and the disputed preambles only state the purpose or intended use for the system.  Inline argues that the preamble recites no structure that is essential to complete the claimed system, and which is missing from the body of the claims.  Inline contends that every feature of the claimed system is recited within the body of the asserted claims and that nothing in the specifications underscores some essential structure that is missing from the body of the claims.  Inline maintains that the preamble was not relied upon to distinguish prior art during prosecution and that the preambles could be deleted entirely, and replaced with "a system comprising:" and the result would be the same claimed system.  Finally, Inline argues that the mere repetition of preamble items in the body of the claim does not make the preamble an antecedent for an independent claim element.

---

[12] *Id.*

7

The preambles at issue recite:

A system for communicating information between an external source of
information and [a plurality of destinations of information / destinations of
information] over a telephone wiring network used for passing telephone
signals in a telephone voice band between a plurality of telephone devices
and a telephone exchange, comprising: ('596 patent, claim 61; '446
patent, claim 1)

A system for communicating information between an external source of
information and destinations of information each at a different one of a
plurality of residences over a telephone wiring network used for passing
telephone signals in a telephone voice band between telephone devices
at the residences and a telephone exchange, comprising:  ('585 patent,
claim 1)

Defendants' first argument that the preambles are limiting rests on the fact that

certain phrases, and specifically "telephone wiring network," are recited in the

preambles and then repeated in the body of the claims.[13]  For instance, the preamble of

claim 61 of the '596 patent recites "[a] system for communicating information . . . over *a*

telephone wiring network . . ." and the first element of body of the claim recites "a

plurality of transceivers coupled between *the* telephone wiring network . . ."  (emphasis

added).

The court agrees with defendants that the preambles provide the antecedent

basis for claim terms recited in the bodies of the asserted claims.  If the preamble

---

[13] Defendants also cite "an external source of information," "a telephone exchange," "telephone
voiceband," and "a plurality of telephone devices" as "claim terms introduced in the preamble using the
indefinite article 'a' that are subsequently referenced in the body of the claim using the definite article 'the.'"
D.I. 439 at 5.  Two of those terms, "external source of information" and "telephone exchange," were construed
by the court in the 2004 *Markman* Opinion. *See* 2004 *Markman* Opinion, 302 F. Supp. 2d at 329.  Defendants
represent that there is no dispute among the parties as to the definition of "telephone voiceband," *see* D.I. 439
at 2, 14, and it does not appear that "plurality of telephone devices" is in dispute.  It would have been most
helpful to the process of this litigation if defendants had raised the issue of preamble limitation at the time of
the court's August 28, 2003 *Markman* hearing, instead of waiting approximately three years to do so,
particularly since defendants would apparently have had the same bases to argue preamble limitation with
regard to two of the terms construed subsequent to that hearing that they now raise in current briefing.

8

recited only "A system comprising:", as Inline suggests would be possible, there would
be no antecedent basis for "*the* telephone wiring system" recited in the bodies of the
asserted claims.[14]  The court also agrees with defendants that the patentee specifically
pointed to the preamble language in question to distinguish the claimed invention from
prior art.  During prosecution of the '596 patent, original application claims 1-20 were
rejected based on certain prior art references.  In an April 13, 1998 Preliminary
Amendment, the patentee amended claims 1 and 20 to distinguish over the prior art.
Additionally, the patentee added new claims, including what became issued claim 61,
which also included the preamble language at issue here.  The patentee pointed to
language from the preamble to distinguish these claims from the prior art:

> Independent claims 21, 56, 59, 60, and 61 distinguish over the previously
> cited at, at least, in that the previously cited art discloses systems that
> either (1) do not use a telephone wiring network that is also used for
> passing telephone signals between telephone devices and a telephone
> exchange . . . .[15]

Consequently, the court determines that the preambles at issue substantively

limit the asserted claims.

---

[14] *See Bell Comms. Research Inc. v. Vitalink Comms. Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) ("[A]
claim preamble has the import that the claim as a whole suggests for it.  In other words, when the claim drafter
chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the
invention so defined, and not some other, is the one the patent protects."); *NTP, Inc.*, 418 F.3d at 1306 (Fed.
Cir. 2005) ("Because these limitations of claim 1 of the '960 patent derive their antecedent basis from the
claim 1 preamble and are necessary to provide context for the claim limitations, the use of these limitations
in the preamble limits the claim."); *Catalina Marketing Int'l*, 289 F.3d at 810-11 (Fed. Cir. 2002) ("While the
phrase 'located at predesignated sites such as consumer stores' appears only in the preamble of Claim 1, this
language appears in both the preamble and body of Claim 25.  Hence, the applicants specifically included this
language in the claim not once, but twice.  By virtue of its including in the body of Claim 25, this phrase limits
Claim 25."); *see also Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1356 (Fed. Cir. 2003) ("[I]t is a rule
of law well established that the definite article 'the' particularizes the subject which it proceeds.  It is a word
of limitation as opposed to the indefinite or generalized force of 'a' or 'an'." (quoting *Am. Bus Ass'n v. Slater*,
231 F.3d 1, 4-5 (D.C. Cir. 2000)).

[15] D.I. 481, Ex. B at 26.

9

## B. The Court's Claim Construction

IT IS ORDERED that, having considered all of the parties arguments (whether or not explicitly discussed below), the disputed claim language in asserted claims of the patents-in-suit, as identified by the parties, shall be construed consistent with the tenets of claim construction set forth by the United States Court of Appeals for the Federal Circuit in *Phillips v. AWH Corp.*,[16] as follows:

1. "*telephone wiring network*": the network of twisted pair wires extending from the point of convergence where the signal interface may be installed downstream to telephone devices which is shared by information and telephone signals in a telephone voice band.

Inline's proposed construction is adopted by the court. Defendants argue that the "telephone wiring network" "extends or runs from the telephone devices to the telephone exchange." The patentee did not claim the entire existing communication pathway over which telephone voice signals travel but, rather a system for communicating information from an external source, through the signal interface and downstream to destination devices over the same twisted pair wires that also carry telephone signals. Defendants' proposed preamble limitation, and related construction, would expand the asserted claims to cover the public trunk line all the way back to the telephone exchange in contradiction to the common specification, the claims, and the court's prior claim construction determinations.

The common specification recites:

---

[16] 415 F.3d 1303 (Fed. Cir. 2005).

10

> The present invention relates to a system for simultaneous two-way communication of video signals and other signals between multiple networks of telephone wiring whose twisted pairs converge together into a single bundle, wiring block, or other common point of access, and a high capacity communication line located at that point of access. Each network includes a set of interconnected, active telephone wires (i.e., a group of wires that create a conductive path for telephonic signals) internal to a house, an apartment unit, or a room in a commercial building. Such wiring internal to houses, apartment units, or rooms in commercial buildings shall be referred to herein as "local networks.")[17]

* * * * *

> The present invention relates to a system for simultaneous two-way communication of video signals and other signals between multiple networks of telephone wiring . . . providing distribution of . . . signals to a local network of active telephone wiring (i.e., the wiring internal to a house, apartment unit, or a room in a commercial building) from a distribution device that connects to the trunk line of a public or private telephone network. That device is located where the telephone lines for multiple local networks converge to meet the public network trunk (or PBX, in the case office buildings) . . . .[18]

"The interface includes a transceiver/switch that is connected to multiple pairs of

telephone wiring and is interposed between the telephone wire pairs from the local

telephone exchange (the trunk line) and the extended telephone wire pairs leading to

separate local networks of telephone wiring."[19]

The court agrees with Inline that "the fact that there is a communications

pathway from telephone devices to . . . a telephone exchange does not mean that the

telephone wiring network - of the claims - is coextensive with that entire

communications path."[20]

The claims bear out this determination. Each independent claim of the patent-in-

---

[17] '596 patent, 1:22-33.
[18] Id. 1:62-2:4.
[19] Id. 9:1-6.
[20] D.I. 480 at 11.

11

suit demonstrates that the "telephone wiring network" cannot include the entire
communications pathway extending back to the telephone exchange. Each includes a
limitation describing transmission of high frequency signals over the "telephone wiring
network" and, therefore, shows defendants' proposed construction is incorrect. For
instance, claim 61 of the '596 patent includes an element requiring "circuitry for
transmitting to selected sets of one or more of the plurality of transceivers a
corresponding plurality of signals *in the high frequency band* each encoding one of the
plurality of information streams *over the telephone wiring network*."[21]

In the 2004 *Markman* Opinion, the court construed the claimed signal interface to
be "[a] device interposed on the opposite end (i.e., the local side) of the public trunk line
(as defined by the inventor in the patent) from the telephone exchange that performs
the recited functions of the incorporated circuitry."[22]   The court stated that:

> [T]he signal interface is designed to prevent high frequency signals,
> coming from the external source, from passing onto the public telephone
> trunk line. . . . The blocking of these high frequency signals from the
> public trunk line is accomplished by the specific circuitry in the signal
> interface, low pass filters 474, which block high frequency signals from
> passing onto the public telephone network, but allow low frequency
> telephone signals to transmit.[23]

---

[21] '596 patent, claim 1; *see also* '446 patent, claim 1 (including the limitations "circuitry for transmitting *over the telephone wiring network* to the transceiver an internal signal *in the high frequency band* encoding the information stream" and "circuitry for limiting transmission of the internal signal in the high frequency band *from the telephone wiring network to* the telephone exchange." (emphases added)); '585 patent, claim 1 (including the limitation "the signal interface includes circuitry for receiving a plurality of external signals encoding information streams from the external source of information, circuitry for transmitting *over the telephone wiring network* to the transceivers a plurality of internal signals *in the high frequency band* encoding the information streams, and circuitry for *limiting transmission of signals in the high frequency band* from *the telephone wiring network* to the telephone exchange and for passing signals in the telephone frequency band between the telephone wiring network and the telephone exchange." (emphasis added). The figures of the patents also support this conclusion. *See, e.g.*, '596 patent Fig. 1a, Fig. 1b.

[22] 2004 *Markman* Opinion, 305 F. Supp. 2d at 329.

[23] *Id.* at 323.

Because defendants' proposed construction of "telephone wiring network" would impermissibly permit high frequency signals to be transmitted over the public trunk line, it must be rejected.

2. "*telephone voice band*": frequencies of 0-4 kHz

This term is not in dispute.[24]

3. "*telephone signals*": The court determines that no construction is necessary and the common meaning of this term applies.

4. "*telephone signals in a telephone voice band*": telephone signals in the range of frequencies between approximately 0-4 hKz.

Defendants proposed construction is adopted by the court. Inline proposes that "telephone signals in a telephone voice band" means "telephone signals that are expressed as analog signals within the voice frequency band of 0-4 kHz on the network of twisted pair wires and on a trunk line in any analog or digital form." The court finds no intrinsic evidence to support Inline's construction. Indeed, Inline acknowledges that "the common specification does not specifically describe telephone signals in a telephone voice band as analog or digitized on a public trunk line . . . ."[25] The court, therefore, declines to construe this phrase as including Inline's additional verbiage.[26]

5. "*telephone wiring network used for passing telephone signals in a telephone voice*"

---

[24] *See* D.I. 480 at 20; D.I. 439 at 14.

[25] D.I. 480 at 24.

[26] *Cf. SuperGuide Corp. v. DirectTV Enters., Inc.*, 358 F.3d 870, 878 (Fed. Cir. 2004) (reversing district court for limiting "regularly received telephone signals" and "radio frequency information" to analog forms; "[t]he district court should have begun its analysis by first examining the claim language. . . . The claim language does not limit the disputed phrases to any particular type of technology or specify a particular type of signal format, such as analog or digital. Indeed, neither 'analog' or 'digital' appears in any of the asserted claims.").

13

*band between a plurality of telephone devices [or telephone devices at a residence] and a telephone exchange*"; "*circuitry* for limiting transmission of signals in the high frequency band from the telephone wiring network to the telephone exchange and *for passing signals in the telephone frequency between the telephone a telephone wiring network and the telephone exchange*": the telephone wiring network (as defined above) is used for passing telephone signals in the telephone voice band (as defined above) to the telephone exchange.

Inline's proposed construction is adopted (as the court has defined the relevant claim terms recited in this phrase). Defendants' proposed construction, that the phrase "requires that telephone signals in the telephone voiceband (i.e., 0-4 kHz) be passed over the telephone wiring network extending between the telephone devices at one end and the telephone exchange at the other end" is rejected as the court has not construed "telephone wiring network" as extending to the telephone exchange." The court's construction of this phrase necessarily flows from the courts construction, above, of the terms contained therein.

6. Signal interface including "*circuitry for limiting transmission of the internal signal in the high frequency band from the telephone wiring network to the telephone exchange*"; Signal interface including *"circuitry for limiting transmission of signals in the high frequency band from the telephone wiring network to the telephone exchange*": the signal interface includes circuitry that prevents high frequency signals (i.e., frequencies above the telephone voice band between 0.25 MHZ and an undetermined upper limit) from traveling upstream from the signal interface to the telephone exchange.

14

Defendants propose this claim term means the signal interface must include
"circuitry that prevents high frequency signals (i.e., signals of 250 kHz and higher) from
traveling upstream on the telephone wiring network to the telephone exchange."[27]
Inline argues that this phrase "requires that the high frequency analog signals encoded
by the signal interface for transmission downstream to the transceiver, including but not
limited to, frequencies in a range above 250 kHz, are limited from transmitting upstream
to the telephone exchange."[28]

The court construes this phrase based on its prior rulings. The court has already
determined that the signal interface is designed to prevent high frequency signals from
passing onto the public trunk line and back to the telephone exchange.[29] The court
construed "high frequency band" as "frequencies above the telephone voice band
between 0.25 MHZ and an undetermined upper limit."[30] The court, and defendants,[31]
do not disagree that the "comprising" transitional phrase may mean that signals other
than those in the high frequency band may be prevented from transmitting to the
telephone exchange. At a minimum, however, the signal interface must have circuitry
for preventing transmission of high frequency band signals (as previously construed by
the court) to the telephone exchange.[32] After the court construed "high frequency band"
in its October 19, 2004 Memorandum Opinion, the parties represented that they did not

[27] D.I. 470 at 23.
[28] D.I. 452 at 2.
[29] 2004 *Markman* Opinion, 302 F. Supp. 2d at 323-24 (citing the '596 patent, 48:37-39; Figure 2; and
the prosecution history of the '596 patent).
[30] *Inline Connection Corp. v. AOL Time Warner Inc.*, 347 F. Supp. 2d 56, 80 (D. Del. 2004).
[31] *See* D.I. 470 at 27-28.
[32] *See Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 347 F. Supp. 2d 56, 1345-46 (Fed. Cir. 2003)
("Comprising is a term of *1345 art used in claim language which means that the named elements are
essential, but other elements may be added and still form a construct within the scope of the claim." (quoting
*Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997)).

15

wish to present arguments concerning the upper limit of the "high frequency band." Consistent with the court's prior construction of that phrase, therefore, the court construes the phrase at issue as requiring the signal interface to have "circuitry that prevents high frequency signals (i.e., frequencies above the telephone voice band between 0.25 MHZ and an undetermined upper limit) from traveling upstream from the signal interface to the telephone exchange."

7. "*circuitry for transmitting to selected set of one or more of the plurality of transceivers*"; "*circuitry for selecting a subset of zero or more transceivers*": identifying a transceiver to receive the information stream and directing the information stream to that transceiver.

Inline's construction is adopted by the court. Defendants' proposed construction is that the signal interface "includes circuitry for choosing among a plurality of possible information streams in response to control signals from a user and transmitting the chosen information stream to that user's transceiver."[33] The court declines to add the additional limitation of user selection. The common specification recites "*[t]he transceiver/switch receives multiple signals . . . from the high-capacity communication link such as a coaxial cable or fiber-optic line, and selectively switches these video signals onto the individual phone lines, together with the phone signals.*"[34] The claims at issue with regard to this phrase do not recite a limitation requiring a "response to control signals from a user" as defendants' proposed construction requires. The court has noted that, "[i]f an apparatus claim recites a general structure without limiting that

---

[33] D.I. 439 at 24.
[34] '596 patent, 8:18-23.

16

structure to a specific subset of structures, the term will generally be construed to cover all known types of that structure, which the patent disclosure supports."[35]  Further, dependent claim 2 of the '596 patent, includes the limitation "circuitry for selecting at least one of said video signals *in response to control information from a user*."[36] "'[w]here some claims are broad and others narrow, the narrow claim limitations cannot be read into the broad whether to avoid invalidity or escape infringement.'"[37]

8.  Transceiver "*circuitry for communicating with the signal interface in a high frequency band of frequencies above the highest frequency of the telephone voice band*";

Transceiver "*circuitry for communicating with the signal interface in a high frequency band*": the user's transceiver includes "circuitry either for receiving signals from the signal interface, or sending signals to the signal interface or both, in a band of frequencies above the telephone voice band between 0.25 MHZ and an undetermined upper limit.

Inline's proposed construction is adopted by the court.  The common meaning of communicating includes either sending *or* receiving information.  Defendants' argues "that the user's transceiver *must* be capable of both receiving high frequency signals from *and* transmitting high frequency signals to the signal interface" is too narrow."[38] The common specification describes instances of one way communication.[39]  As

---

[35] 2004 *Markman* Opinion, 302 F. Supp. 2d at 313 (citing *CCS Fitness, Inc v. Brunswick Corp.*,  288 F.3d 1359, 1367 (Fed. Cir. 2002).

[36] '596 patent, claim 2 (emphasis added).

[37] *Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1570 (Fed. Cir. 1983) (quoting Kalman v. Kimberly-Clark Corp., 713 F.2d 760, 770 (Fed. Cir. 1983)).

[38] D.I. 439 at 30 (emphasis added).

[39] *See* '596 patent, 6:55-57 ("This requires one-way communication of video."); '596 patent, 7:65-67 ("Accordingly, it is seen that the invention provides a technique for one-way distribution of signals of a general nature . . . .").

defendants point out, when the patentee wanted to require circuitry for both transmitting and receiving information that limitation was articulated in the claims.  For instance, claim 1 of the '585 patent recites a limitation that "the signal interface includes circuitry for receiving . . . [and] transmitting" signals.  The claim term discussed here, uses the broader term "communicating," therefore, the court declines to incorporate the more narrow limitation proposed by defendants.

9.  "the telephone wiring network includes a *branch network* which couples one of the plurality of telephone devices to the telephone network telephone network [sic], and the *branch network* includes circuitry for preventing transmission of signals in the high frequency band to one of the telephone devices on the *branch network*": the branch network is part of the telephone wiring network.

Defendants propose "branch network" be defined as "[a] path of electrical wiring and/or circuitry that includes a slit off a main conductive path and is defined by wiring topology independent of physical enclosures."[40]  Defendants assert that "[t]he plain meaning of 'branch network' in the context of the asserted claims is a network of wiring that includes a split off of a main conductive path."[41]  Defendants provide no support to this purported "plain meaning" other than extrinsic evidence in the form of the deposition testimony of Inline's expert, Dr. Beckmann.  Inline proposes that "branch network" be defined as "the local network of telephone wires internal to a residence or other structure where telephone devices are located."[42]  Inline supports its proposed

---

[40] D.I. 439 at 32.
[41] *Id.*
[42] D.I. 480 at 5.

18

definition by citation to the language of claim 61 of the '596 patent; language from claim 1 of the later-issued '585 patent (directed at a "branch conductive path"); and language from the common specification defining "local networks."[43]

The parties have not cited, and the court has not found, specification discussion of "branch network." The intrinsic and extrinsic "evidence" cited to the court does not clearly support the parties' competing constructions. Therefore, consistent with the language of claim 61 of the '596 patent, the court determines the "branch network" is part of the telephone wiring system.

10. Transceiver "*circuitry . . . for accepting signals in a high band of frequencies above the highest frequency of the telephone voice band and rejecting signals in the telephone voice band*"; Transceiver "*circuitry for accepting signals in a high frequency band of frequencies above the highest frequency of the telephone voice band and rejecting signals in the telephone voice band*": In light of the court's construction of claim terms contained within this phrase, and noting the "comprising" transitional phrase of these claims, no further construction is required.

11. "*circuitry for preventing transmission of signals in the high frequency band to one of the telephone devices on the branch network*"; "*a plurality of filters . . . for preventing transmission of signals in the high frequency band to the telephone devices*"; "*a filter . . . for preventing signals in the high band of frequencies from passing to the telephone device*": In light of the court's construction of claim terms contained within this phrase, and noting the "comprising" transitional phrase of these claims, no further construction

---

[43] *Id.* at 38-39.

19

is required.


January 29, 2007

_____
United States Magistrate Judge