IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, <br>    Plaintiffs, <br><br> v. <br><br> AOL TIME WARNER INCORPORATED, et al., <br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | <br><br><br><br><br><br> C. A. No. 02-272-MPT |
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC, <br>    Plaintiffs, <br><br> v. <br><br> EARTHLINK, INC., <br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | <br><br><br><br><br><br> C. A. No. 02-477-MPT <br><br> Consolidated Cases |

## MEMORANDUM ORDER

**INTRODUCTION**

This is a patent infringement case. Inline Communication Corporation[1] ("Inline") sued America Online Inc. ("AOL") on April 12, 2002, and EarthLink, Inc. ("EarthLink") on June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"), 6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[2] Inline alleges

---

[1] Inline initially sued AOL and Earthlink. Since the original filing of the complaints, other plaintiffs have been added because of their contractual relationships with Inline. For ease of reference, all plaintiffs shall be referred to as Inline.

[2] Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to the litigation after it was issued in 2003. The '718 patent is no longer at issue in the litigation.

defendants' Digital Subscriber Line products infringe claim 61 of the '596 patent, claims 1-6 of the 446 patent, and claims 1, 2, 4, 8 and 9 of the '585 patent.

Defendants move for summary judgment of non-infringement of the asserted claims of the patents-in-suit.[3] For the reasons discussed below, defendants' motion is denied.

## STANDARD OF REVIEW

A grant of summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[4] This standard is applicable to all types of cases, including patent cases.[5]

## DEFENDANTS ARGUMENTS FOR SUMMARY JUDGMENT

*I. ADSL Provisioned through an RT DSLAM do not Infringe because the Preamble includes "Passing Telephone Signals to a Telephone Exchange."*

In light of the court's most recent claim construction order,[6] defendants informed the court that they were withdrawing their arguments for summary judgment of non-infringement based on this limitation.[7] Therefore, the court need not address the parties' positions on this argument.

---

[3] D.I. 436.
[4] Fed. R. Civ. Pro. 56(c).
[5] *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989).
[6] D.I. 614.
[7] D.I. 616 at 52-53.

*2. The Accused DSLAMs do not have the Ability to "Select" Destinations of Information in Response to user Input.*

As defined by defendants,[8] the "signal interface" is a DSLAM and a DSLAM transmits signals to and from an ISP via an ATM network. Defendants describe this connection as a virtual circuit or a logical persistent pathway for data between the ISP and user.[9] Defendants describe this pathway as provisioned by the network operator when a new user acquires ADSL service. They urge that it remains fixed during the Internet session, and may remain so for weeks or months. They contend that the DSLAM acts as a passive conduit through which ATM cells (packets of information) pass from the ISP to their intended destination or end user. Defendants assert that the DSLAM cannot change the path in response to a user's input. The choice of which cells go to which user is made upstream from the DSLAM.

Inline contends that the DSLAMS act as a multiplexer, selecting the information from the broadband information network that is destined for each subscriber and routing that information to the proper ADSL modem. Inline argues that there is a "mapping" of the signals in order for the information intended for a particular subscriber to go to the correct subscriber and that the DSLAM's mapping "fabric" changes the address bits in the header to indicate the cell's next destination.

Defendants claim non-infringement of claim 61 of the '596 patent and claim 8 of the '585 patent because the claims require the signal interface include circuitry for choosing from among a plurality of possible information streams "in response to control

---

[8] D.I. 437 at 16.
[9] *Id.*

3

signals from a user."[10]  As determined herein, the court declines to add the additional limitation of user selection to the claimed invention.  Without the limitation of "user selection," it is possible that use of DSLAMS as devices that select between a multiple of data streams, and transmit the resultant streams to their final destination, may be infringing.  Whether DSLAMS have multiplexing and addressing functions which fall within the confines of the claimed invention is a question of fact.  For the reasons stated above, defendants' motion for summary judgment on non-infringement as to claim 61 of the '596 patent and claim 8 of the '585 patent is denied.

### 3. ADSL Modems do not Communicate with the DSLAM in the High Frequency Band.

Claim 1 of the '585 patent states, in pertinent part, that "each transceiver includes circuitry for communicating with the signal interface in a high frequency band of frequencies above the highest frequency of the telephone voice band . . . ."  Defendants argue that ADSL modems send signals in the 25 to 138 kHz band, and therefore are non-infringing.  They contend that since claim 1 of the '585 patent requires transceivers to contain "circuitry for communicating with the signal interface in the high frequency band, the "communication" is by definition, bi-directional.  They argue that the transceiver must both send and receive high frequency signals[11] to and from the signal interface at frequencies above 250 kHz.  Defendants maintain that there is no literal infringement since ADSL Modems transmit signals in the 25 to 138 kHz band, far below 250kHz.  They further claim that the use of ADSL modems are not

---

[10] D.I. 437 at 17.
[11] Defined as signals above 250mHz

infringing because the transmission of signals in the voice and high frequency bands between ADSL modem and the DSLAM are not equivalent. Because there are physical differences caused by frequency attenuation which are the result of operation at lower or higher frequency bands,[12] defendants contend that lower frequencies can carry more information than higher frequencies due to frequency attenuation.

Inline argues that ADSL service using DSLAMs falls within the limits of claim 1 of the '585 patent, since the signal interface must only communicate in the high frequency band, not communicate bi-directionally, or "send and receive" in high frequency bands. Inline argues that ADSL modems receives communications from the DSLAM in frequencies between 138 kHz and 1104 kHz, a frequency band that encompasses the requirement of 250 kHz and above forth in the court's prior *Markman* opinion.[13]

Here, the court has construed the term "communication" to have its common meaning which includes either sending or receiving information. The construct does not require that communication be "to and from" the transceiver at high frequencies, but allows for the device to receive high frequencies and send frequencies within the voice band as described in the claim language and patent specification. Therefore, it is possible that ADSL modems communicate with DSLAMs in the high frequency band above 250 kHz. In addition, transceivers may include circuitry to perform that function. Therefore, defendants' motion for summary judgment for non-infringement on claim 1 of the '585 patent is denied.

---

[12] D.I. 437 at 23.
[13] *Inline Connection Corp., v. AOL Time Warner Inc.*, 347 F. Supp. 2d 56 (D. Del. 2004)

4. *"Circuitry for Limiting Transmission of . . . Signals in the High Frequency Band from the Telephone Wiring Network to the Telephone Exchange"*

At the pre-trial conference, the court permitted defendants to submit a letter identifying purportedly undisputed facts contained in summary judgment briefing which would, based upon the court's January 29, 2007 construction of "circuitry for limiting transmission of . . . signals in the high frequency band from the telephone wiring network to the telephone exchange," require the court to grand defendants' summary judgment of non-infringement of the '446 and '585 patents. Inline was permitted to submit a responsive letter pointing to facts in dispute on this issue. Having reviewed the parties letters[14] and the evidence cited therein, the court determines that a genuine issue of material fact remains with regard to these claim limitations.

For the reasons contained herein,

IT IS ORDERED that:

Defendants' motion for summary judgment of non-infringement (D.I. 436) is denied.

February 2, 2007

United States Magistrate Judge

---

[14] D.I. 617; D.I. 621.