IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC,<br>Plaintiffs,<br><br>v.<br><br>AOL TIME WARNER INCORPORATED, et al.,<br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | C. A. No. 02-272-MPT |
| INLINE CONNECTION CORPORATION, BROADBAND TECHNOLOGY INNOVATIONS, LLC, AND PIE SQUARED, LLC,<br>Plaintiffs,<br><br>v.<br><br>EARTHLINK, INC.,<br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) | C. A. No. 02-477-MPT<br><br>Consolidated Cases |

**MEMORANDUM ORDER**

**I. INTRODUCTION**

This is a patent infringement case. Inline Communication Corporation[1] ("Inline") sued America Online Inc. ("AOL") on April 12, 2002, and EarthLink, Inc. ("EarthLink") on June 4, 2002, alleging infringement of U.S. Patent Nos. 5,844,596 ("the '596 patent"), 6,243,446 ("the '446 patent"), and 6,236,718 ("the '718 patent").[2]

---

[1] Inline initially sued AOL and Earthlink. Since the original filing of the complaints, other plaintiffs have been added because of their contractual relationships with Inline. For ease of reference, all plaintiffs shall be referred to as Inline.

[2] Inline's U.S. Patent No. 6,542,585 ("the '585 patent") was subsequently added to the litigation after it was issued in 2003. The '718 patent is no longer at issue in the litigation.

AOL and EarthLink (defendants) filed a motion[3] requesting the court preclude Inline's infringement expert, Charles L. Jackson, from offering certain testimony at trial. Defendants' motion is directed at Jackson's report and deposition testimony which compares the ADSL systems that defendants supply with the technology set forth in Inline's patent claims.[4] Defendants contend that Jackson's opinions should be excluded for lack of a factual foundation or that they fall outside the scope of his report or expertise. For the reasons discussed, defendants' motion will be granted in part and denied in part.

## II. POSITIONS OF THE PARTIES

Defendants maintain that Jackson's opinions on infringement lack the requisite indicia of reliability, will not assist the trier of fact and should be excluded under Federal Rules of Evidence 702 and 703 and Federal Rule of Civil Procedure 26(a)(2)(b). They argue that his analysis deviates from the standards in *Daubert*,[5] is based on an unreliable factual foundation, and therefore, is inadmissible. Based on those principles, defendants contend there are eight separate reasons for exclusion. In addition, defendants argue that Jackson's testimony be limited to the scope of his area of specialized knowledge and he should only be allowed to provide testimony on matters covered by his expert report.

**Parties' Arguments on FRE 702 Issues**

(1) Defendants move to preclude Jackson from offering any opinion on the

---

[3] D.I. 510 (Motion In Limine to Exclude or Preclude Certain Portions of the Expert Testimony of Dr. Charles L. Jackson).
[4] D.I. 512, Ex. B (Jackson's April 18, 2006 Expert Report).
[5] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

2

number or percentage of AOL and EarthLink customers whose ADSL modems are more than 1000 feet from a remote terminal ("RT") digital subscriber line access multiplexer ("DSLAM"). Defendants contend that Jackson relied on a mathematical assumption and an improper model for calculating the correct percentage. They maintain that the data used was not tied to *any* facts in the case. Inline argues that the data was sufficient for Jackson to make his calculations. Inline claims that his experience in the industry, general knowledge of ADSL physical locations, review of publications covering DSL technology and testimony from defendants' own expert[6] are enough for Jackson to form his opinion. Further, Inline notes that Jackson's opinion about the percentage of customers serviced was not addressed by defendants' experts.

(2) Defendants argue that Jackson cannot offer a reliable opinion on whether two or more AOL or EarthLink customers are provisioned from the same RT DSLAM. They contend that Jackson has no specific knowledge of any such installation and that he must have direct or personal knowledge or reliable data from other sources to prove his assumptions. Inline argues that DSLAMs, by their nature, are installed to serve multiple users.[7] It points to documents produced by the defendants which show more than one subscriber serviced by a particular RT. Finally, it argues that this opinion is not disputed by defendants' experts.

(3) Defendants argue that Jackson should be precluded from offering an opinion on whether any AOL or EarthLink customers have two or more telephones with low-

---

[6] D.I. 554, Ex. A at 295 (Waring deposition: "telephone loops ... the majority of the loops are longer than 1000 feet").
[7] D.I. 512, Ex. B at 25.

3

pass filters installed. Defendants contend that Jackson admitted to his lack of knowledge on the subject. Inline suggests that lack of personal knowledge goes to the weight of Jackson's testimony, and not its admissibility.[8] While he claimed to have no knowledge of a specific installation, Inline argues that, the data Jackson applied, was sufficient for him to opine about the percentage of households which have two or more phones. Inline suggests that his knowledge, skill, training and education provide an adequate foundation for his opinion. Further, it points to several documents, including network diagrams and defendants' email messages, which support his opinion.[9] Finally, Jackson's report references home installation kits that include multiple microfilters and instruct customers to place these on telephone *jacks* which Inline argues is evidence of two or more telephones per customer installation.

(4) Defendants move to preclude Jackson from offering an opinion that any AOL or EarthLink customer is provisioned in a manner which satisfies all limitations of the asserted claims. Defendants contend that Jackson admitted to not knowing of a single instance of infringement by an ADSL subscriber of defendants, and such lack of information prevents him opining on that subject. Inline argues that Jackson is not required to know of specific customers to opine that ADSL services infringe the asserted claims: rather, the issue is whether his opinion is based on "valid reasoning and reliable methodology."[10] It argues that Jackson properly compared defendants' industry standard ADSL systems to the asserted claims on a element-by-element

---

[8] D.I. 553 at 23 (citing *Poly-America, Inc. v. Serrot Int'l Inc.*, CIV. A. 300CV1457D, 2002 WL 1996561, *1,*14 (N.D. Tex. 2002)).
[9] D.I. 553 at 13.
[10] D.I. 553 at 4 (citing *In re TMI Litigation*, 193 F.3d 613, 665 (3d Cir. 1999)).

4

basis.[11] Further, it notes that defendants have more than 2 million registered ADSL subscribers and that Jackson reasonably concluded that defendants have customers who infringe the asserted claims.[12]

(5) Defendants argue that Jackson cannot opine on the deployment of ADSL services through next generation digital loop carriers ("NGDLCs") as opposed to DSLAMs in remote terminals because he failed to properly analyze whether NGDLCs meet the "signal interface" claim limitation or determine if any of defendants' customers are provisioned through NGDLCs. Inline contends that Jackson reviewed a data sheet on NGDLC and applied his experience and extensive knowledge of ADSL to conclude that NGDLC technology satisfies the signal interface claim in the patents-in-suit. Inline asserts that Jackson can be tested on cross examination; that his opinion is based on sufficient facts; and, that pursuant to *Daubert*, his opinion should not be excluded.

(6) Defendants argue that Jackson should be precluded from offering any opinion regarding high speed digital communication technologies other than ADSL,[13] his report lacks any reliable factual basis that the telephone companies ('telcos") who provide ADSL also use other high speed systems. Defendants contend that Jackson did not confirm whether the telcos provide high speed technologies other than ADSL. Inline argues that Jackson does not purport to opine that defendants' services are used with other technologies: rather, Jackson determined that those technologies also infringe. Because of his knowledge of the high speed digital communication field, Inline

---

[11] D.I. 512, Ex. B at 60-69.
[12] To the extent that this argument relates to Inline's indirect infringement claims, it will be addressed later in this opinion.
[13] Technologies such as CAP, ADSL2, ADSL2+, VDSL, or VDSL2 systems.

asserts that his conclusion is reliable. According to Inline, under FRE 703, Jackson may consider evidence presented at trial to opine that defendants infringe if they use technology other than ADSL.

(7) Defendants argue that Jackson cannot provide a reliable opinion on the rate of deployment of ADSL services from remote terminals that are supplied by either T1 or fiber optic lines, because his report does not differentiate between the percentage of defendants' customers serviced through RT DSLAMs with those provisioned through COs. Inline contends that since Jackson has extensive knowledge regarding the availability and use of the various high speed technologies, he can offer a qualitative comparison that would assist the jury.[14] Although during deposition, Jackson could not recall how a specific customer was provisioned,[15] Inline posits that he may opine on the percentage of customers serviced through the different high speed equipment and services.

(8) Defendants move to preclude Jackson from offering any opinion on ATM networks and how they connect to RT DSLAMs. In support of their position, defendants emphasize Jackson's failure to identify a specific telco which provides ATM technology directly to a RT and conclude that his opinion on that subject is speculative. Inline argues that Jackson has knowledge of the structure of ATM networks and their relationship with RT DSLAMs as evidenced in his report and deposition.[16] According to Inline, defendants misconstrue the legal standard. It further maintains that to exclude

---

[14] D.I. 553 at 22.
[15] D.I. 554, Ex. H at 126.
[16] D.I. 553 at 23.

Jackson's testimony based on lack of direct knowledge is inconsistent with FRE 703.

**Parties' Arguments on FRCP 26(a)(2)(B) Issues**

Defendants want Jackson precluded from testifying on certain issues because they fall outside his expertise or were not addressed in his expert report as required under FRCP 26(a)(2)(B). Defendants claim that Jackson's report does not explain how or why they infringe; that Jackson admittedly does not understand the principles of contributory or induced infringement; and that neither a contributory nor induced infringement analysis is contained in his expert report. In response, Inline asserts that Jackson is not and cannot testify on the legal standards of direct, contributory or induced infringement.[17]

Defendants also argue that Jackson should be precluded from testifying on the Doctrine of Equivalents ("DOE") beyond what is disclosed in his expert report or proffered during his deposition, and, as a result, his DOE analysis is limited to a single issue, that is, whether the signal interface claim element is satisfied under DOE by NGDLCs. Defendants rely on the directive of the Federal Circuit that, to establish infringement under DOE, the analysis required is on a limitation by limitation basis.[18] Since Jackson proffered no other DOE assessment, defendants maintain that he is precluded from offering any other opinions of DOE at trial. In addition, defendants contend that despite the limited DOE analysis by Jackson, Inline is precluded from introducing *any* evidence of DOE in light of the court's prior summary judgment ruling

---

[17] D.I. 624 at 13 ("Dr. Jackson can only be instructed at trial on the legal elements of these issues, and then opine whether these elements are satisfied.").
[18] D.I. 569 at 4 (citing *Inline Connection Corp. v. AOL Time Warner Inc.*, 364 F. Supp. 2d 417, 436 (D. Del. 2005)).

7

on signal interface.[19] Inline claims that Jackson is not precluded from opining about DOE. It relies on FRE 703, arguing that an expert can testify based upon the facts or data made known to him at or before trial. Further, Inline notes that the court's prior decision was directed only to literal infringement by RT DSLAMs within COs, and did not address DOE of the signal interface claim element.

Defendants also contend that Jackson should be excluded from discussing BYOA services because no reference of such services is made in his report. Inline contends that he mentioned the technology in his deposition,[20] but was not adequately questioned on the subject.

Finally, defendants argue that Jackson should be limited at trial to the disclosures in his expert report and deposition regarding his opinion of the report of Albert Whited (defendants' infringement expert). Defendants claim that Jackson was unprepared to address Whited's opinion during deposition, and, therefore, is precluded from commenting upon it at trial. Inline posits that Jackson is entitled to rebut Whited's opinion.[21]

### III. DISCUSSION

**Standard of Review**

Defendants argue that Jackson's testimony lacks the reliability required by Federal Rules of Evidence ("FRE") 702.

FRE 702 provides in relevant part:

---

[19] *Inline Connection Corp. v. AOL Time Warner Inc.*, 364 F. Supp. 2d 417, 436 (D. Del. 2005).

[20] D.I. 553 at 28.

[21] *Id.* ("Dr. Jackson had no opportunity to provide a written opinion in response to Mr. Whited's rebuttal report.").

8

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court found that FRE 702 "confides to the judge some gatekeeping responsibility in deciding questions of the admissibility of proffered expert testimony."[22] This gatekeeper function of excluding unreliable testimony has also been applied to patent litigation.[23] *Daubert* provides a "non-exclusive checklist"[24] for trial courts to use in their assessment of whether expert testimony met the reliability requirements. The FRE *Advisory Committee Notes*[25] are instructive as well. The 2000 Amendments emphasize that no single factor is necessarily dispositive of the reliability of an expert's testimony. Rather, the amendments identify a number of factors relevant to non-scientific expert testimony on the issue of reliability.

The determination of whether to exclude expert evidence is committed to the court's discretion.[26] The Third Circuit has noted, however, that:

> While evidentiary rulings are generally subject to a particularly high level of deference because the trial court has a superior vantage point to assess the evidence . . . , evaluating the reliability of scientific methodologies and data does

---

[22] *Daubert*, 509 U.S. at 600.
[23] *See Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167 (1999).
[24] *Daubert*, 509 U.S. at 593.
[25] "The specific factors explicated by the *Daubert* Court are: (1) whether the expert's technique or theory can be or has been tested---that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community." FRE 702, *Advisory Committee Notes*, 2000 Amendments.
[26] *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 749 (3d Cir. 1994).

not generally involve assessing the truthfulness of the expert witnesses and thus is often not significantly more difficult on a cold record. Moreover, here there are factors that counsel in favor of a hard look at (more stringent review of) the district court's exercise of discretion. For example, because the reliability standard of Rules 702 and 703 is somewhat amorphous, there is a significant risk that district judges will set the threshold too high and will in fact force plaintiffs to prove their case twice. Reducing this risk is particularly important because the Federal Rules of Evidence display a preference for admissibility.[27]

The Third Circuit found that "'the exclusion of critical evidence is an 'extreme' sanction, not normally to be imposed absent a showing of willful deception or 'flagrant disregard' of a court order by the proponent of the evidence,'"[28] and identified several factors for the court to consider in deciding whether to exclude testimony:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.[29]

The Third Circuit also noted that "'the importance of the excluded testimony' should be considered."[30]

Nonetheless, the trial judge has considerable leeway in determining whether expert testimony is reliable. The Third Circuit found in *In re Paoli R.R.* that profferers of expert testimony do not have to "demonstrate . . . by a preponderance of the evidence that the assessments of their experts are *correct*, they [need] only . . . demonstrate by a preponderance of evidence that their opinions are reliable."[31] *Daubert* recognizes that

---

[27] *Id.* at 749-50.
[28] *Id.* at 791-92 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir.1977)).
[29] *Id.*
[30] *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers*, 559 F.2d at 904).
[31] *In re Paoli R.R.*, 35 F.3d at 744.

"vigorous cross examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."[32] *Daubert* emphasizes that the trial court must "focus" solely on principles and methodology, and not on the conclusions they generate.[33] A trial judge, however, is to scrutinize whether such methods have been properly applied to the facts of the case.[34]

In making the decision to exclude evidence, the court must balance the need for the challenged evidence against the risk that it will confuse the jury and delay trial.[35] To exclude evidence is within purview of the court, but "determinations to exclude evidence before the challenging party has an opportunity to develop the record are unfair and improper."[36] The Federal Circuit's decision in *Micro Chemical Inc. v. Lextron, Inc.*[37] sheds light on the role of the trial court under FRE 702. "When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying an expert's testimony."[38] Finally, the Third Circuit clearly emphasized that "'the importance of the excluded testimony' should be considered."[39]

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to "contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the

---

[32] *Daubert*, 509 U.S. at 596.
[33] *Id.* at 580.
[34] *See id.*
[35] *See In re Paoli R.R.*, 35 F.3d at 746.
[36] *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).
[37] 317 F.3d 1387 (Fed. Cir. 2003).
[38] *Id.* at 1392.
[39] *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997) (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904 (3d Cir. 1977)).

11

opinions; . . . " If the report falls short of meeting the standard of a complete statement, FRCP 37(c)(1) provides that:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any . . . information not so disclosed.

"In addition, in the case of an expert who is required to provide a report pursuant to 26(a)(2)(B), the obligation to supplement extends to the information contained in the report and through deposition of the expert."[40]

**Reliability**

The factual evidence and opinions challenged by the defendants in their eight separate points[41] are both probative of and relevant to the issues of infringement and damages.[42] Under the standards of the Third Circuit, the court may exclude relevant evidence as an "extreme sanction." No willful deception or flagrant disregard of a court order has been suggested. Jackson's qualifications–his skill, education, experience and training–are uncontested. His report contains sufficient data to support his conclusions and inadequate evidence has been presented to refute his methodology. Defendants' suggestion that there is *no* factual foundation[43] for Jackson's opinions is misplaced. In forming his opinion, Jackson reviewed and relied upon the Inline patents and their prosecution histories; the court's claim construction and decisions; his knowledge of the field of communications and computer technology; the declarations of

---

[40] FRCP 26 Advisory Committee Notes 1993 Amendments.
[41] Challenged under FRE 702 for failure to provide a factual foundation.
[42] While the court considered all of the arguments presented by the parties, only the arguments pertinent to the motion *in limine* are discussed herein.
[43] D.I. 511 at 2.

12

opposing experts; DSL literature, and other documents and learned treatises.[44]

Defendants, nevertheless, urge the court to exclude Jackson's testimony and opinion in their eight points because they claim that the underlying data on which he relies is unreliable. For example, defendants contend that Jackson cannot testify about the number or percentage of AOL or Earthlink customers whose ADSL modems are more than 1000 feet from an RT. Defendants reason that his data lacks the requisite indicia of reliability because they did not agree with his assumptions or the mathematical model used to reach his conclusions. Despite their eight points of argument, defendants fail to apply the appropriate analysis set forth in FRE 702 or *Daubert*.

Defendants also look to FRE 703 to exclude Jackson's testimony, citing that the "underlying data must be of a type reasonably relied upon by experts in the particular field."[45] First, defendants present no evidence that Jackson's methodologies are inconsistent with or not recognized by other experts in the field. Second, FRE 703 allows an expert to use data or information that otherwise would be inadmissible if it is "reasonably relied upon by experts in the particular field." Defendants provide no basis that the information Jackson used in his analysis is inadmissible or not accepted by experts in the industry. Defendants may not agree with his conclusions, but that is not a basis to strike an expert's opinion under FRE 702 or 703. The evidence shows that Dr. Jackson used sufficient data and mathematical models, and applied his years of

---

[44] D.I. 512, Ex. B at 3; Ex. D (containing a list of materials upon which Jackson relied for his analysis).

[45] D.I. 512 at 4 (citing *In re TMI Litigation*, 193 F.3d 613, 697 (3d Cir. 1999)).

experience in the communications industry to reach his conclusions.

Defendants' complaints about the reliability of Jackson's report are based on a failure to investigate or lack of adequate familiarity or knowledge. Their arguments primarily focus on the weight to be afforded his opinions, and not on reliability. Many of their arguments claim that Jackson must have direct knowledge of individual acts of infringement in order to be reliable under FRE 702. That argument conflicts with *Daubert* which provides that "[a]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."[46] Jackson applied his knowledge of the industry, the information from the telcos and the materials provided by defendants and their experts to reach his conclusions, consistent with FRE 702.

As evidenced from his report, Jackson did not base his opinion solely on unverified sources or conjecture. His analyses, sources and conclusions can be tested through cross-examination. Therefore, defendants' motion to exclude based on FRE 702 and 703 is denied.

**Exclusion based on Expertise or Scope of Expert Report**

Defendants argue that Jackson should be precluded from testifying about several topics that are either outside of the scope of his expertise or not contained in his expert report. Specifically, they seek to exclude his opinion on DOE and his rebuttal to Whited's report.[47]

---

[46] *Daubert v. Merrell Dow Pharma. Inc.*, 509 U.S. at 592.
[47] Defendants also moved to exclude Jackson's opinion or discussion of BYOA and indirect infringement. As will be discussed later herein, since BYOA and indirect infringement are no longer issues in the case, the court need not address those matters.

14

In order to prove infringement under DOE, a patentee must provide evidence, usually in the form of expert opinion, as to the "insubstantiality of the differences" between the claims and the accused device on a limitation by limitation basis.[48] In his DOE analysis, Jackson compares a NGDLC with a DSLAM and does a direct comparison of the claim elements to the NGDLC. He concludes that a NGDLC provides the same "function, way and result" as a DSLAM in an ADSL based system, and thus infringes.[49] However, Jackson's report is lacking any other DOE analysis. Other than in his assessment of direct infringement, he does not compare the accused services with the claim elements in the manner required under a DOE analysis. Inline merely argues that there are DOE issues[50] that have not been decided by the court: no other reason why Jackson should be allowed to now expand his opinion is provided.

Pursuant to FRCP 26(a)(2)(B), an expert report shall contain a complete statement of all opinions to be expressed. Infringement under DOE is Inline's burden to prove. Since no amendments or modifications to Jackson's opinion under Rule 26(e) were identified by Inline, new theories on how defendants' accused services meet the claim limitations under DOE will not be introduced at trial.[51] Therefore, defendants motion to exclude Jackson's testimony on DOE, beyond his opinion on NGDLCs, is granted.

Defendants argue that Jackson should not be allowed to testify regarding BYOA

---

[48] See Inline Connection Corp. v. AOL Time Warner Inc., 364 F. Supp. 2d 417, 447 (D. Del. 2005).
[49] D.I. 512 at 55.
[50] Inline did not advise the court as to those disputed issues that exist on DOE for trial.
[51] See FRCP 37(c)(1) which provides an incentive for full disclosure, that is, a party will generally not be permitted to use on direct examination expert testimony not disclosed under Rule 26.

or indirect infringement because such matters were not contained in his expert report.[52] Since the filing of defendants' motion, Inline has withdrawn its claims of indirect infringement, both contributory and inducement of infringement under 35 U.S.C. § 271(b).[53] Further, the court granted defendants' motion *in limine* to exclude Malackowski's testimony (Inline's damage expert) on BYOA services.[54] Moreover, during a hearing on a motion for continuance, Inline's counsel represented that BYOA was not a part of the case.[55] In light of Inline's concessions and the court's prior ruling, the issues of indirect infringement and BYOA are moot and need not be addressed.

Defendants argue that, pursuant to FRCP 26(a)(2)(B), Jackson is precluded from offering opinions beyond what is contained in his expert report and deposition regarding Whited's report. Inline contends that Jackson never had the opportunity to respond to Whited's rebuttal opinion, and pursuant to FRE 703, his opinion on that report is allowed because the rule "anticipates an expert witness offering opinions at trial based on evidence that is uncovered subsequent to the expert's report including testimony the expert hears at trial."[56] Defendants respond that although Jackson reviewed Whited's opinion, he was unprepared to comment on it during his deposition.

FRE 703 pertains to the admission of inadmissable facts or data relied upon by an expert prior to trial: it is not specifically directed to whether an expert can offer a

---

[52] Defendants also move to exclude any opinion from Jackson on indirect infringement since it is abundantly clear from his deposition that he had no understanding of contributory infringement or inducement of infringement. See D.I. 512, Ex. A at 98.
[53] D.I. 624 at 12-13.
[54] *Inline Connection Corp. v. AOL Time Warner Inc.*, C.A. 02-272-MPT, 2007 WL 108382 (D. Del. Jan. 16, 2007).
[55] D.I. 624 at 33. ("Then as to the issue – by the way, on the issue of the reports and so forth, BYOA was just used as an example of why that was a problem. *BYOA is not a part of the case so it is just sort of a nonissue, frankly.*") (emphasis added).
[56] D.I. 553 at 29.

new or undisclosed opinion at trial. Pursuant to FRCP 26(a)(2)(B), an expert report shall contain a *complete* statement of all opinions to be expressed. Moreover, under 26(e)(1), a party has the affirmative obligation to supplement its prior disclosures which are incomplete when material additional information is learned and such information has not been previously disclosed during the discovery process or in writing. Rules 26(a)(2)(B) and 26(e)(1) require disclosures in advance of trial of the bases and reasons for an expert's opinions. FRCP 37(c)(1) provides a "strong inducement for disclosure of material that the disclosing party *would expect* to use as evidence . . . ."[57] Whited's report was provided to Inline weeks before Jackson's deposition. Before his deposition, Jackson reviewed Whited's report, but had not formulated an opinion on that report. Jackson's deposition occurred in July 2006, over six months before trial. If Inline expected to use Jackson to rebut Whited's opinion, it was obligated to supplement its prior discovery responses or advise defendants in writing of Jackson's additional opinions.[58] Since no supplementation to Jackson's opinion are identified by Inline, defendants' motion to preclude Jackson from testifying on subjects outside the scope of his deposition and report in response to Whited's non-infringement report is granted.

February 5, 2007

_____
UNITED STATES MAGISTRATE JUDGE

---

[57] See FRCP 37 *Advisory Committee Notes*, 1993 Amendments (emphasis added).
[58] FRE 26(e)(1) ("With respect to the testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert . . . .").